**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose VELEZ, Defendant–Appellant.**

**Nos. 95–10459, 96–10053.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 16, 1997.

Decided May 12, 1997.

Lorraine J. Mansfield, Las Vegas, Nevada, for defendant-appellant.

Michael E. Barr, Assistant United States Attorney, Las Vegas, Nevada; Richard S. Shine, United States Department of Justice, Washington, D.C., for plaintiff-appellee.

Before: LAY,* GOODWIN and SCHROEDER, Circuit Judges.

LAY, Senior Circuit Judge:

Jose Velez was convicted of one count of conspiracy to file false applications with the Immigration and Naturalization Service in violation of 18 U.S.C. § 371 and nine counts of filing false statements with the INS in violation of 18 U.S.C. § 1001. He was sentenced to a term of seventy-five months. On appeal he challenges his sentence by contest-

---

* Honorable Donald P. Lay, Senior Circuit Judge  for the Eighth Circuit, sitting by designation.

ing the district court's application of the Sentencing Guidelines.

Velez operated a Las Vegas, Nevada, private immigration consulting service which assisted aliens in preparing and filing legalization applications with the INS office. Velez headed what the government calls a sophisticated false-application operation resulting in the filing of thousands of false applications with the Las Vegas INS office. He also directed the Nevada chapter of the League of United Latin American Citizens (LULAC), which is given statutory authority by the Attorney General to assist aliens in preparing legalization applications.

The record is replete with various schemes, beginning in 1988, in which Velez committed fraud on the INS on behalf of illegal immigrants. For example, he prepared, signed and filed a false amnesty application on behalf of an alien who worked for him, and then counseled her to lie during an INS interview that Velez attended with her. Velez purchased partially completed fraudulent affidavits signed by a farm labor contractor. Velez's employee entered the names of various applicants on these affidavits as each applicant paid Velez $125, falsely indicating the applicant had served the requisite agricultural duties. Velez's employees would then prepare false accompanying INS applications and would file the documents with the INS. Velez also assisted another immigration consultant to acquire similar false affidavits from labor contractors. These were also included in support of false applications to the INS.

In early 1989 Velez filed three false INS applications and received $5,250 for the service. He worked with recruiters and received over $22,000 for filing thirteen additional false applications for Taiwanese aliens during January 1989. In the spring of 1989 Velez taught other consultants how to falsify late amnesty applications and supplied false supporting employment documents to corroborate each false application, charging a fee of $1,000 per application. At Velez's direction one of his employees alone prepared more than 100 false amnesty applications for Velez's clients. In one case, Velez received $7,000 for providing his unlawful services to a single family.

In June 1989, LULAC filed 300 late amnesty applications for the clients of one of the consultants Velez had trained to prepare false applications. Virtually all of these 300 applications were false, and Velez grossed $270,000 from this arrangement alone. At Velez's request, between November 1989 and September 1990 this consultant assisted Velez in fingerprinting and photographing 2900 applicants whom recruiters brought by buses to Velez's office. The consultant, also a notary public, improperly notarized stacks of blank affidavits to support the aliens' applications, notarized stacks of completed affidavits in the absence of the affiants, and prepared false tax returns for inclusion in the applicants' files.

Velez also taught groups of aliens to falsify their applications and to create false supporting documents. In this regard he advised them to sign partially completed affidavits on behalf of each other, even where they were unfamiliar. Later, others working at Velez's direction would complete the affidavits with false information regarding United States residency. Velez or those working for him filed thousands of these false amnesty applications with the INS.

Additionally, in late 1989 Velez personally attempted to circumvent recruiters he had previously relied upon by directly soliciting Taiwanese applicants. He later purchased hundreds of otherwise blank envelopes from various Mexican cities bearing backdated postmarks, to be addressed to applicants using United States addresses in order to create the illusion of lengthy United States residency. . Velez sold many of these envelopes to other immigration consultants.

Velez insisted on payment in cash for his services. He received an average of $10,000 per day in cash, kept $280,000 in his home safe, and grossed over $1 million in 1990 alone.

### THE SENTENCE

At sentencing the district court applied § 2F1.1 of the United States Sentencing

Commission, Guidelines Manual.[1] The court increased Velez's offense level by thirteen pursuant to U.S.S.G. § 2F1.1(b)(1)(N), on the basis that Velez was responsible for $4,152,-305 in loss as determined by the fees others paid to obtain his services. The district court found Velez to have been a leader or organizer in the criminal activity and increased his offense level by four under § 3B1.1(a). The district court also found that the offense involved more than minimal planning and increased the offense level by two pursuant to § 2F1.1(b)(2), and departed upward by one level under § 5K2.7 upon finding that Velez had intentionally disrupted a governmental function.

From this, the district court reached a total offense level of twenty-six, which, when combined with Velez's criminal history category of I, resulted in a Guidelines range of sixty-three to seventy-eight months. The court sentenced Velez to sixty months' incarceration for each of the first five counts, to run concurrently with each other, and to fifteen months for each of the remaining five counts, to run concurrently with each other but consecutive to the sentence for the first five counts. The court therefore sentenced Velez to an aggregate term of seventy-five months.

On appeal, Velez maintains that the district court should have applied § 2L2.1 of the Guidelines rather than § 2F1.1(b); alternatively, he contests the loss calculation made by the district court under § 2F1.1(b). Velez also challenges the district court's upward departure for disrupting a governmental function and the court's imposition of consecutive sentences.

We need not pass on the troublesome issue of loss calculation under § 2F1.1(b) in view of the fact that we find the court erred by not sentencing Velez under § 2L2.1. We affirm the district court's one-level departure for disruption of a government function under § 5K2.7. Since we remand for resentencing we do not pass on the consecutive-sentence issue.

### THE APPROPRIATE GUIDELINE

■ The Statutory Index found in Appendix A of the Guidelines Manual provides that § 2F1.1 applies to convictions under 18 U.S.C. § 1001. However, this court in *United States v. Cambra*, 933 F.2d 752, 755 (9th Cir.1991), explicitly recognized that the Index is only an "interpretative aid" and that courts should apply the "most applicable guideline." The relevant commentary explicitly states:

> Sometimes, offenses involving fraudulent statements are prosecuted under 18 U.S.C. § 1001, or a similarly general statute, although the offense is also covered by a more specific statute.... *Where the indictment or information setting forth the count of conviction ... establishes an offense more aptly covered by another guideline, apply that guideline rather than § 2F1.1.*

§ 2F1.1, comment. (n. 13) (emphasis added). Velez urges that U.S.S.G. § 2L2.1 is the applicable guideline. This section expressly applies to "Trafficking in a Document Relating to Naturalization, Citizenship, or Legal Resident Status" and "False Statement in Respect to the Citizenship or Immigration Status of Another." § 2L2.1.

The government reasons, as did the district court, that it would be more appropriate to apply § 2F1.1 because Velez orchestrated a complex, large-scale conspiracy involving thousands of false applications and millions of dollars. The government argues that § 2L2.1 is designed only for small-scale trafficking in forged or false documents for relatively modest sums of money since it focuses on the number of documents instead of on the amount of money generated. The district court chose to apply the guideline with the greater incremental enhancements because of the high level of greed manifested in the large amount of money Velez generated by his crime. The government contends that because two offense levels can be added pursuant to § 2F1.1(b)(2) for more than minimal planning without the necessity of an upward departure, § 2F1.1 is more applicable to such

---

1. By its terms this guideline applies to "Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other Than Counter-feit Bearer Obligations of the United States." U.S.S.G. § 2F1.1.

a sophisticated conspiracy as is present here. We disagree.

We find that the more applicable guideline is § 2L2.1. By its very title § 2L2.1 concerns false statements relating to naturalization and immigration. Additionally, its substantive language applies to large-scale conspiracies. Indeed, this court last year applied § 2L2.1 to a conspiracy involving at least a thousand fraudulent documents from four different locations in the Los Angeles area. *See United States v. Torres,* 81 F.3d 900 (9th Cir.1996). The district court there had found that the conspiracy involved thousands of documents and that the defendants profited from the conspiracy. This court affirmed the district court's finding that the criminal activities were for profit. *Torres,* 81 F.3d at 902 (citing *United States v. Buenrostro–Torres,* 24 F.3d 1173, 1175 (9th Cir.1994) (involving a similar false-document operation)).

It is true that the defendants in *Torres* were not charged with violating § 1001 but rather 18 U.S.C. § 1028(a)(2), which specifically proscribes using false statements of identification in the mail. However, this fact is not helpful to the government since the Guidelines Statutory Index cites the applicable guideline for § 1028 to be § 2F1.1 as well as § 2L2.1 and § 2L2.2. This led the *Torres* court to declare: "Section 2L2.1 applies against traffickers in documents relating to naturalization, citizenship, or legal resident status." *Id.* at 903.

We also note the difficulty apparent in the government's argument that § 2F1.1 is the most applicable guideline based on the incremental enhancements that that guideline permits for large losses due to fraud. Here, the government is the purported victim. However, the problem becomes how to measure its loss. Our sister circuits have concluded that the question of the defendant's gain is relevant only to the extent it reflects a victim's loss. *See United States v. Chatterji,* 46 F.3d 1336, 1342 (4th Cir.1995) ("A defendant's gain may be an appropriate estimate of loss only when there is some actual, intended, or probable loss."); *United States v. Andersen,* 45 F.3d 217, 221 (7th Cir.1995) ("While gain may normally prove an adequate surrogate

for loss, gain may be used only as an alternative method of calculation when there is in fact a loss, and only if use of the gain results in a 'reasonable estimate of the loss.'" (quoting U.S.S.G. § 2F1.1, comment. (n.8))); *United States v. Haddock,* 12 F.3d 950, 960 (10th Cir.1993) ("[T]he [§ 2F1.1(b)(1)] enhancement is only for loss to victims, not for gain to defendants.").

While *Cambra* might be read as inconsistent with this line of cases, *but see Chatterji,* 46 F.3d at 1340–41 n. 7 (questioning whether *Cambra* should be broadly read as holding a defendant's gain is an appropriate measure of loss), and *Andersen,* 45 F.3d at 222 n. 2 (same), this court recently observed that "'we ... insist upon [the] use of a realistic, economic approach to determining what losses [the defendant] truly caused or intended to cause, rather than the use of some approach which does not reflect the monetary loss.'" *United States v. Allison,* 86 F.3d 940, 943 (9th Cir.1996) (quoting *United States v. Harper,* 32 F.3d 1387, 1392 (9th Cir.1994) (alteration added by *Allison* court)).

We mention this dispute over the loss calculation under § 2F1.1 not to resolve it, because it is unnecessary to do so, but to note the problem with the government's insistence that because money is involved § 2F1.1 is the more specific guideline. We think it is not that simple. More to the point, it is apparent that § 2L2.1 includes large conspiracies involving fraudulent conduct in immigration matters; § 2L2.1(b)(1) takes into account whether profit is involved, and § 2L2.1(b)(2) takes into account trafficking in various amounts of documents—up to 100 or more. Additionally, the fact that the district court may have to depart to accommodate the degree of Velez's conspiracy would not by itself demand application of the fraud guideline.

Section 2L2.1 simply is not relegated to single instances of document trafficking. We recognize that in *Cambra* this court affirmed application of § 2F1.1, but we find *Cambra* distinguishable. There, the defendant pled guilty to three counts of violating the Food, Drug and Cosmetic Act. One of the counts charged him with selling counterfeit steroids with intent to defraud or mislead. This court

approved the district court's use of § 2F1.1 in sentencing the defendant despite that another guideline, § 2N2.1, specifically applied to violations of the Food, Drug and Cosmetic Act. The *Cambra* court found § 2F1.1 applicable because an application note to § 2N2.1 expressly directed the sentencing court not to use § 2N2.1 where the offense involves fraud. In the present case, however, § 2L2.1 explicitly contemplates false and fraudulent activities.

We hold that the district court erred in applying § 2F1.1 to Velez's criminal activities. On remand the court is to apply § 2L2.1.

## DEPARTURE FOR DISRUPTING GOVERNMENT FUNCTION

■ Guideline § 5K2.7 permits a sentencing court to depart from a defendant's guideline range to reflect the nature and extent of a significant disruption in a governmental function caused by the defendant's conduct. Velez contends that the district court erroneously departed upward based on § 5K2.7 because disruption of a governmental function is inherent in the offense of filing false applications with the INS.

The sentencing court may depart upward when there "exists an aggravating ... circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b).

Guideline § 5K2.7 notes that the departure "ordinarily would not be justified when the offense of conviction is an offense such as bribery or obstruction of justice" because in those cases the "interference with a governmental function is inherent in the offense." U.S.S.G. § 5K2.7. Unlike bribery or obstruction of justice, however, filing false documents to obtain amnesty or citizenship does not inherently disrupt a government function; the INS's administrative process could go on unabated even though an applicant has provided fraudulent information. By definition one necessarily disrupts a legitimate government function when bribing an official or obstructing his or her duties.

We hold that disruption of a governmental function is not inherent in Velez's charged offenses, and that disruption under these circumstances was an aggravating circumstance of a kind or to a degree not contemplated in the express exception within § 5K2.7. The district court carefully considered the volume of false applications Velez caused to be filed with the INS and also considered Velez's apparent admission that he *intended* to file the many applications in order to overwhelm the INS's application policing process. Transcript of Sentencing at 65–80. The court found Velez's intentional disruption warranted a one-level upward departure. *Id.* at 102. Because the disruption resulted not from the nature of Velez's crime, but from its extent, the district court did not abuse its discretion by departing upward. *See* U.S.S.G. § 5K2.7 (noting that even if interfering with a government function is inherent in the offense the upward departure is appropriate where the circumstances are unusual). Additionally, we find that the single-level departure was reasonable under these facts.

## CONCLUSION

In sum, we hold the district court erred in sentencing Velez under U.S.S.G. § 2F1.1 instead of § 2L2.1. However, we find the court did not abuse its discretion by departing upward for interference with a governmental function. In view of our decision we need not pass on the calculation of loss under § 2F1.1 or whether the imposition of the consecutive sentence was proper.

We therefore vacate the sentence of the district court and remand to the district court to render a new sentence in accord with this opinion.

REVERSED and REMANDED.