**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose VELEZ, Defendant–Appellant.**

**No. 97–10385.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1999.

Opinion Decided Feb. 19, 1999.

Opinion Withdrawn Aug. 5, 1999.

Decided Aug. 5, 1999.

44. *Id.* at 775, 780, 109 S.Ct. 1468.

Lorraine J. Mansfield, Law Offices of Lorraine J. Mansfield, Las Vegas, Nevada, for the defendant-appellant.

John W. Van Lonkhuyzen, United States Department of Justice, Washington, D.C., for the plaintiff-appellee.

Before: LAY,[*] GOODWIN and SCHROEDER, Circuit Judges.

### ORDER

The court's opinion filed on February 19, 1999, and reported at 168 F.3d 1137 (9th Cir.1999) is vacated and withdrawn. The opinion filed this date shall be substituted and filed in place of the withdrawn opinion.

With the filing of the new opinion, the panel has voted to deny the petition for rehearing and to reject the suggestion for rehearing en banc.

The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R.App. P. 35.

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

### OPINION

LAY, Circuit Judge:

The earlier opinion of this court dated February 19, 1999, and reported at 168 F.3d 1137 (9th Cir.1999) is ordered withdrawn and this opinion shall be substituted and filed in its place.

Jose Velez operated a private immigration consulting service in Las Vegas, Nevada which assisted aliens in preparing and filing legalization applications with the Im-

---

[*] Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by desig-

nation.

migration and Naturalization Service ("INS"). Velez was also the director of the Nevada chapter of the League of United Latin American Citizens ("LULAC"). LULAC was considered a Qualified Designated Entity ("QDE") by the INS, which means that it was given statutory authority by the Attorney General to assist aliens in preparing legalization applications. Beginning in March 1988, Velez was paid to file false reports on behalf of aliens. Between March 1988 and January 1991, over six thousand applications were submitted to the INS by Velez, many of which contained false information. At least sixteen applications were filed during a three month period in 1988 when the INS was accepting applications exclusively from QDEs.

Velez was charged with one count of conspiracy to file false applications with the INS in violation of 18 U.S.C. § 371 and eleven counts of filing false statements with the INS in violation of 18 U.S.C. § 1001.[1] He was convicted by a jury and sentenced to 75 months imprisonment. He appealed his sentence claiming that the district court incorrectly applied the Sentencing Guidelines. This court vacated the sentence and remanded to the district court, holding that the appropriate Sentencing Guideline was § 2L2.1 rather than § 2F1.1. *United States v. Velez*, 113 F.3d 1035, 1039 (9th Cir.1997). This court also affirmed the district court's one-level upward departure for disrupting a governmental function. *Id.*

After the case was remanded for resentencing, the court reduced the sentence from 75 to 57 months. In so doing, the court imposed a two-level enhancement for abuse of trust under U.S.S.G. § 3B1.3 and a two-level upward adjustment for the substantial number of falsified immigration documents. Velez is now appealing his resentencing, once again contesting the district court's application of the guidelines. Velez claims that the district court erred

(1) by giving him a two-level enhancement for abuse of position of trust and (2) by imposing a two-level upward departure for the volume of false applications. We disagree and now affirm the sentence of the district court.

*Abuse of Trust Enhancement*

■ United States Sentencing Guideline section 3B1.3 states that a defendant's offense level can be increased by two "[i]f the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense." United States Sentencing Commission, *Guidelines Manual*, § 3B1.3 (Nov.1994). It further provides that "[t]his adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic." *Id.* The district court employed this enhancement to Velez's sentence because it determined that Velez's use of his position as head of a QDE was "tantamount to showing a badge."

Velez contends that he was a fiduciary of LULAC but not the INS. He argues that he could not have abused a position of public trust because he held no such position with respect to the victim of his offense. Velez also maintains that abuse of trust is already included in his base offense level so that further enhancement of his sentence on that basis constitutes double counting and is prohibited by the guidelines. We disagree.

■ This court reviews a district court's interpretation of the Sentencing Guidelines *de novo;* reviews its application of the Sentencing Guidelines to the facts of the case for abuse of discretion; and reviews the supporting factual findings for clear error. *United States v. Barnes*, 125 F.3d 1287, 1290 (9th Cir.1997). We find the district court was not clearly erroneous in finding that Velez abused his position of trust.

---

**1.** Two of the false statement counts were dismissed on the government's motion prior to trial.

■ First, there should be little doubt that Velez had a position of trust with the INS. An abuse of trust does not have to occur between an employer and its employee. *See United States v. Garrison,* 133 F.3d 831, 839 n. 18 (11th Cir.1998)(stating that "as used in the guideline, 'position of public or private trust' is a term of art" not necessarily coterminous with a fiduciary) (quoting *United States v. Ragland,* 72 F.3d 500, 502–03 (6th Cir.1996)). Instead, in order to determine if a person held a position of trust, this court follows the formula set forth in *United States v. Hill,* 915 F.2d 502 (9th Cir.1990). *See United States v. Oplinger,* 150 F.3d 1061, 1069 (9th Cir. 1998). In *Hill,* we stated that "the primary trait that distinguishes a person in a position of trust from one who is not is the extent to which the position provides the freedom to commit a difficult-to-detect wrong." *Hill,* 915 F.2d at 506. There are two indicia of this position of trust: (1) "the inability of the trustor objectively and expediently to determine the trustee's honesty" and (2) "the ease with which the trustee's activities can be observed." *Id.*

Velez's position as director of LULAC provided him "the freedom to commit a difficult-to-detect wrong." Velez had special status with the INS as the director of a QDE. Because of his favored status, he could file applications when others could not. Furthermore, his false documents could not be discovered as a matter of routine and his activities were not easily observable. The INS also depended on his honesty. *See United States v. Rutgard,* 116 F.3d 1270 (9th Cir.1997) (upholding application of abuse of position of public trust enhancement to physician who made false entries in his medical records in effecting Medicare fraud).

■ Furthermore, we hold the abuse of trust was not part of the base offense in this case. There is a difference between a breach of trust and an abuse of trust. *United States v. Christiansen,* 958 F.2d 285 (9th Cir.1992). Unlike an individual immigrant who files false papers, Velez relied on his favored position with the INS as a director of a QDE to facilitate his crime. Therefore, the enhancement should be applied in this case not for any breach of trust which might be inherent in the offense, but as a result of Velez's abuse of trust due to his position as a director of a QDE.

Not only did Velez hold a position of trust, he used his position "in a manner that significantly facilitated" his crimes. U.S.S.G. § 3B1.3. Velez used his status to attract clients and to expedite the filing process. More importantly, Velez filed thousands of documents on behalf of LULAC—at least 16 of which were filed during the three month period when only QDE organizations could file such applications. Therefore, because Velez held a position of trust and used his position to significantly facilitate his crimes, his crime warrants the enhancement for abuse of trust.

*Upward Departure for Volume of Documents*

The United States Sentencing Guideline sets forth the grounds for departure and states that in order to depart from the guidelines the court must find that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." U.S.S.G. § 5K2.0. The district court departed upward two levels in this case because of the volume of documents Velez falsified. The court reasoned that at least 2,700 immigration files were involved and that section 2L2.1 did not account for the vast amount of documents.

■ Velez contends that the district court erred because the departure was based on the amount of money involved and violated the Sixth Amendment. We are unpersuaded by these arguments.[2]

---

**2.** First, the departure was based on the volume of documents and not on the amount of

We are troubled, however, by the undisputed fact that the upward departure exceeded the maximum penalty provided in the guidelines.[3] Because this argument was not brought forth by the parties, we must review for plain error. *See United States v. Eastman*, 758 F.2d 1315, 1318 (9th Cir.1985) ("Federal Rule of Criminal Procedure 52(b) allows an appellate court to take notice of 'plain errors or defects affecting substantial rights' although they are not brought to the attention of the court by the parties."); Fed.R.Crim.P. 52(b)(1998).

Pursuant to an agreement between the parties, the 1994 sentencing guidelines are the relevant guidelines in this case. During re-sentencing, the district court used section 2L2.1 of the 1994 guidelines to determine Velez's base offense level. The base offense level under that section is nine. Section 2L2.1 further provides a two-level increase if the number of false documents is between 6 and 24; a four-level increase if the number is between 25 and 99; and a six-level increase if the number is 100 or more.[4] The district court increased Velez's base offense level by six because he submitted more than 100 false documents. As we have discussed, the district court then departed upward two additional levels because of the large number of false documents Velez submitted.

In *United States v. Martinez*, 946 F.2d 100 (9th Cir.1991), the Ninth Circuit held that an upward departure based on the possession of a large quantity of cocaine was impermissible. The Drug Quantity table at the time of the sentences provided that all offenses involving more than 50 kilograms of cocaine were assigned a base offense level of 36. The court held that "[t]he phrase 'or more of any of the above' indicates that the Sentencing Commission did consider the circumstance of higher quantities of cocaine and concluded that the level was to be the same regardless of how much more than fifty kilograms of cocaine was involved." *Martinez*, 946 F.2d at 102.

Like *Martinez*, section 2L2.1 provides a fixed increase for "100 or more" documents. This language indicates that the Commission considered situations in which the number of documents was more than 100. In our earlier opinion, we found that *Martinez* controlled our opinion and we held that the trial court erred in departing upward two additional levels because of the large number of false documents submitted by Velez. On the petition for rehearing, the government now argues that *Martinez* has been implicitly overruled by *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), and *United States v. Sanchez–Rodriguez*, 161 F.3d 556 (9th Cir.1998). In *Koon*, the Supreme Court considered the district

money involved and thus Velez's first argument is without merit. Second, there was no violation of the Sixth Amendment right to counsel or to confront witnesses. Although only 32 files were submitted at trial, the government introduced evidence in the form of testimony that Velez was responsible for the submission of thousands of false applications. Velez had adequate opportunity to confront the witnesses offering such testimony.

3. Jurisdiction over the sentence in this case is pursuant to 18 U.S.C. § 3742 which provides in pertinent part: "Upon review of the record, the court of appeals shall determine whether the sentence—(1) was imposed in violation of law; ... (3) is outside the applicable guideline range, and is unreasonable...."

4. In 1997, an application note was added to section 2L2.1 explicitly stating that "[i]f the offense involved substantially more than 100 documents, an upward departure may be warranted." United States Sentencing Commission, *Guidelines Manual*, § 2L2.1, comment (n.5)(Nov.1998). At the time of the 1994 guidelines, however, there was no such language. The fact that application note 5 allowing departure was later added does not necessarily change our analysis. We have held that "[a] subsequent amendment may be entitled to substantial weight in construing earlier law when it plainly serves to clarify rather than change the existing law." *United States v. Martinez*, 946 F.2d 100, 102 (9th Cir.1991) (citations omitted).

court's decision to depart downward from the guidelines and stated the following:

> The Commission provides considerable guidance as to the factors that are apt or not apt to make a case atypical, by listing certain factors as either encouraged or discouraged bases for departure. Encouraged factors are those "the Commission has not been able to take into account fully in formulating the guidelines." § 5K2.0. Victim provocation, a factor relied upon by the District Court in this suit, is an example of an encouraged downward departure factor, § 5K2.10, whereas disruption of a governmental function is an example of an encouraged upward departure factor, § 5K2.7. Even an encouraged factor is not always an appropriate basis for departure, for on some occasions the applicable Guideline will have taken the encouraged factor into account. For instance, a departure for disruption of a governmental function "ordinarily would not be justified when the offense of conviction is an offense such as bribery or obstruction of justice; in such cases interference with a governmental function is inherent in the offense." *Ibid. A court still may depart on the basis of such a factor but only if it "is present to a degree substantially in excess of that which ordinarily is involved in the offense." § 5K2.0.*

*Koon,* 518 U.S. at 94–95, 116 S.Ct. 2035 (emphasis added).

The government urges, citing *Koon* and *Sanchez–Rodriguez,* and emphasizing the deference to be given to the district court, that 2,700 false documents is such a degree in excess of one hundred that it falls outside the heartland of cases contemplated by the guidelines. The government relies upon § 5K2.0 which says that in order to depart from the guidelines, there must be an aggravating or mitigating circumstance not adequately taken into consideration by the Sentencing Commission. The government's position is that 2,700 false documents is twenty-seven times the numerical category set forth in the guidelines and that, as such, there were *substantially* more than one hundred false documents. Therefore, the government contends that the district court's discretion in departing upward should be sustained. We agree.

■ In our review of *Koon,* there is no question this court must give "substantial deference" to the district court's decision to depart under the guidelines. *See Koon,* 518 U.S. at 98, 116 S.Ct. 2035. In *Sanchez–Rodriguez,* writing for the en banc court, Judge Betty Fletcher stated *"Koon* made clear that we cannot categorically forbid a district court from departing downward on any basis except for those specially proscribed in the Guidelines." *Sanchez–Rodriguez,* 161 F.3d at 560 (footnote omitted). In the present case, although we deal with an upward departure, the same legal principles apply. *See United States v. Sablan,* 114 F.3d 913 (9th Cir.1997) (en banc), *cert. denied,* —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998); *United States v. Roston,* 168 F.3d 377, 378 (9th Cir.1999) (stating that review of upward departure "is highly deferential on appeal"). Here the district court found that Velez was responsible for filing 2,700 false applications with the INS. The court found that this amount constituted a factor outside of the heartland of § 2L2.1 and departed upward two levels. We now hold the trial court did not abuse its discretion.

*Restitution*

Velez also objects to a reference on the docket sheet reflecting that he owes restitution. Restitution was never imposed by the judge and the government admits that the reference to restitution is a mistake. It is stricken from the record.

For the foregoing reasons, the sentence imposed by the district court is ordered AFFIRMED.