**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Aaron Mena PEREZ, Defendant–
Appellant.**

No. 03–1268.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 28, 2004.

Decided Feb. 25, 2004.

Barry Miller, Office of the United States Attorney, Chicago, IL, for plaintiff–appellee.

Standish E. Willis, Chicago, IL, for defendant–appellant.

Before MANION, DIANE P. WOOD, and EVANS, Circuit Judges.

## ORDER

Aaron Perez was one of eight men indicted for the manufacture and sale of counterfeit green cards and social security cards at the Mega Mall on Milwaukee Avenue in Chicago. Perez pleaded guilty (without a plea agreement) to one count of conspiracy to produce and transfer false identification documents, 18 U.S.C. § 1028(f), (a)(1), (a)(2); four counts of transferring false identification documents, 18 U.S.C. § 1028(a)(2); and one count of being present in the United States without permission after having been previously removed, 8 U.S.C. § 1326(a). He was sentenced in January 2003 to a total of 96 months' imprisonment.

At sentencing, the court heard testimony from one of Perez's codefendants, Eduardo Rios. Rios explained the operation: Perez would sell blank documents to Rios (and others) at a wholesale price of $40 to $50, and Rios would resell them at a mark-up. He described how Perez, who had known Rios earlier in California, invited him to join the operation. He also testified that although Perez led the organization, after his arrest he directed Rios and other codefendants to identify someone else as the leader–first Perez's nephew, later another colleague in Mexico.

Two INS agents involved in the Mega Mall investigation also testified at the sentencing hearing. Gilberto Solis described how, working undercover, he arranged to buy documents from another of Perez's codefendants at a restaurant near the Mega Mall. He testified that when he initially asked for 5000 documents, the codefendant asked leave to speak to "el jefe" ("the boss"), walked to a nearby table where Perez was sitting with his son, then returned to explain that only 1000 documents would be available. The second agent, Hung Nguyen, testified about the conditions of Perez's arrest and the involvement of Perez's son in the operation.

The court also examined testimony from another codefendant, Felipe Salgado, including a proffer statement and a transcript from his sentencing hearing. In these documents, Salgado told how he rented Perez the room that was used to produce the counterfeit documents, and offered another account of Perez's attempts to coordinate the codefendants' testimony.

The district court then made several findings affecting Perez's sentence: (1) that Perez was a leader or organizer of the counterfeit-document operation, warranting a four-level upward adjustment under U.S.S.G. § 3B1.1; (2) that Perez obstructed justice by attempting to orchestrate the testimony of his codefendants, warranting a two-level upward adjustment under U.S.S.G. § 3C1.1; and (3) that Perez was responsible for at least 500 sets of documents, warranting an upward departure under Application Note 5 to U.S.S.G.

§ 2L2.1. Perez challenges each of these three sentencing decisions.

Perez challenges the court's leadership finding by suggesting that his only significant role in the organization was "fronting" the counterfeit documents to the other participants–selling them the blank cards for resale. He argues that this does not show the "degree of control and authority exercised over others" that the guidelines require. *See* U.S.S.G. § 3B1.1, comment. (n.4). He also questions the district court's reliance on the fact that one of the codefendants referred to him as "el jefe" during the sale to Agent Solis. *See id.*, comment. (n.4) (noting that titles such as "kingpin" and "boss" are not controlling). Finally, he disputes the court's inference that because his son was often with him as he carried out his business with the organization, Perez must have been in a position of significant authority.

■ These arguments do not show that the district court's finding was clearly erroneous (the standard of review for a factual finding under § 3B1.1, *United States v. Falcon*, 347 F.3d 1000, 1003 (7th Cir. 2003)). Both Rios and Salgado identified Perez as the leader of the operation, and there was evidence both that Perez invited other codefendants to sell documents and that he rented the room where the blank documents were made and stored. Also, the expression "el jefe" was not merely a title, but was used to identify Perez as a person with authority to approve the sale. It was not clearly erroneous for the district court to conclude from all this that Perez was a leader or organizer of the operation.

■ Second, Perez argues that there was insufficient evidence that he obstructed justice by attempting to orchestrate testimony–a factual finding this court reviews for clear error, *United States v. Sutton*, 337 F.3d 792, 801 (7th Cir.2003). The court based its finding on Rios's testi-

mony that Perez tried to get him to identify other conspirators as the operation's leaders. Although Perez acknowledges that this, if true, would support an upward adjustment for obstruction of justice, he argues that the testimony of a single co-conspirator alone cannot establish such a fact.

Perez is simply wrong about this. *See, e.g., United States v. Mumford*, 25 F.3d 461, 467 (7th Cir.1994) ("[T]he sentencing court's factual findings can be supported by the testimony of a single witness who is arguably biased against the defendant."). The case he cites to the contrary, *United States v. Johnson*, 227 F.3d 807, 815 (7th Cir.2000), upholds an obstruction finding based on the corroborated testimony of a prisoner that the defendant threatened him; it neither says nor suggests that uncorroborated testimony would have been insufficient. In any event, the record also contained proffer testimony from Salgado to the same effect. The district court's finding that Perez obstructed justice was not clearly erroneous.

■ Perez's third argument focuses on the district court's upward departure based on the number of counterfeit documents. Section 2L2.1 of the sentencing guidelines provides a nine-point upward adjustment if the trafficking offense involves 100 or more documents. Application Note 5 further indicates that "[i]f the offense involved substantially more than 100 documents, an upward departure may be warranted." The district court found Perez responsible for at least 500 documents, and so departed upward the equivalent of three offense levels. Perez does not dispute the document-count estimate (which the court itself characterized as conservative), but argues that the departure was too severe. We review the extent of an upward departure for abuse of discretion. *United States v. Griffith*, 344 F.3d 714, 718 (7th Cir.2003).

A departure equivalent to three offense levels for a five-fold increase in documents is entirely in keeping with the pattern established by § 2L2.1 itself,[1] and thus meets the requirement that sentencing courts "tie departures to the structures of the guidelines," *United States v. Bohanon*, 290 F.3d 869, 877 (7th Cir.2002). Perez's only argument to the contrary is that the Ninth Circuit has found 2700 documents enough to support a departure equivalent to two levels. *See United States v. Velez*, 185 F.3d 1048, 1051–53 (9th Cir.1999). But it would be absurd to conclude from this alone that a departure equivalent to three levels for 500 documents is an abuse of discretion.

AFFIRMED.

---

1. U.S.S.G. § 2L2.1(b)(2) provides:
   If the offense involved six or more documents or passports, increase as follows:

| Number of Documents/Passports | Increase in Level |
|---|---|
| (A) 6–24 | add 3 |
| (B) 25–99 | add 6 |
| (C) 100 or more | add 9. |

