**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

DAVID FREDERICK THORNTON,
            *Defendant-Appellant.*

No. 06-50597

D.C. No.
CR-02-00185-AHS

OPINION

Appeal from the United States District Court
for the Central District of California
Alicemarie H. Stotler, District Judge, Presiding

Argued and Submitted
August 8, 2007—Pasadena, California

Filed January 10, 2008

Before: Stephen Reinhardt and Marsha S. Berzon,
Circuit Judges, and James K. Singleton,*
Chief District Judge.

Opinion by Judge Berzon

*The Honorable James K. Singleton, United States District Judge for
the District of Alaska, sitting by designation.

349

**COUNSEL**

W.C. Melcher and William Paul Melcher, Melcher, Melcher & Melcher, Woodland Hills, California, for the appellant.

George S. Cardona, Acting United States Attorney, Thomas P. O'Brien, Chief, Criminal Division, & Curtis A. Kin, Chief, Domestic Security and Immigration Crimes Section, U.S. Department of Justice, Los Angeles, California, for the appellee.

**OPINION**

BERZON, Circuit Judge:

David Thornton appeals from the district court's decision to not re-sentence him after a limited remand pursuant to *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc). He challenges both the ruling on remand and certain issues with respect to the original sentencing.

## I.

Over the course of several years, Thornton successfully defrauded friends, family members, and complete strangers out of hundreds of thousands of dollars. He used two schemes: The first involved a charitable foundation he established purportedly to raise funds for kidney research for the University of Southern California ("USC"). In return for the funds raised, USC paid Thornton a salary and covered the administrative costs of the fundraising. Although Thornton turned over to USC some of the funds raised, he kept about $150,000 for his own purposes. He also charged more than $25,000 to credit cards taken out on behalf of his foundation and USC, although USC never authorized any joint credit cards. For about a year after USC terminated its relationship with Thornton and his foundation, Thornton continued fraudulently to solicit funds.

In the second scheme, Thornton purported to be working for the United States government on various top secret missions, mostly involving channeling Nigerian money into the United States. Thornton explained to his victims that these transactions required heavy financing but would result in huge returns. Many friends and family members believed the tale, and Thornton bilked them out of hundreds of thousands of dollars. He also unsuccessfully attempted to cash a counterfeit check for $25 million, purportedly from the Nigerian government.

Thornton was indicted and pleaded guilty to two counts of mail fraud, two counts of wire fraud, and one count of impersonating a federal officer. The district court sentenced him to 96 months, around the mid-point of the Sentencing Guidelines range. The Guidelines calculation included a 16-level enhancement for amount of loss, USSG § 2F1.1(b)(1)(Q),[1]

---

[1]USSG § 2F1.1 was repealed in 2001. Because of *ex post facto* concerns with applying higher loss adjustments enacted in the 2001 revisions, the parties agreed that the 2000 Guidelines should apply. All citations to the Guidelines herein are to the 2000 Guidelines.

which included the unsuccessful attempt to cash the $25 million check as intended loss. The calculation also included a two-level enhancement because the offense involved a misrepresentation that Thornton was acting on behalf of a charity, USSG § 2F1.1(b)(4)(A), and a two-level enhancement for abuse of trust, USSG § 3B1.3.

Thornton appealed the sentence, challenging, *inter alia*, the loss calculation and the enhancement for abuse of trust. While his appeal was pending, the Supreme Court held the mandatory Guidelines unconstitutional and directed that the Guidelines are to be advisory only. *United States v. Booker*, 543 U.S. 220 (2005). In an unpublished memorandum disposition, this Court remanded Thornton's appeal to the district court for proceedings consistent with *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc). *See United States v. Thornton*, 176 Fed. Appx. 765 (9th Cir. 2006). Although the memorandum disposition also disposed of one issue raised by Thornton regarding restitution, it did not mention or address his challenges to two sentencing issues affecting the length of incarceration, the loss calculation, and the abuse of trust enhancement.

On remand, the parties submitted position papers. Thornton raised the same issues he had raised on appeal, and also claimed that a pre-existing kidney condition had deteriorated to the point that he needed medical care — a kidney transplant and possible liver transplant — that the Bureau of Prisons ("BOP") could not provide. The district court's decision set forth the contentions of the parties and concluded that the sentence would not have been materially different had the Guidelines been advisory at the time of sentencing.

In the current appeal, Thornton argues certain issues raised but not decided on his first appeal, namely, that the district court erred by (1) including the $25 million check in the amount of loss calculation and (2) applying the abuse of trust enhancement. He also argues that the district court did not

adequately obtain the views of counsel on remand and that its consideration of the sentencing goals and purposes set forth in 18 U.S.C. § 3553(a) was inadequate.

## II.

### A.

Thornton raises two issues argued but not decided on his first appeal. The government suggests that it is unclear whether these issues are properly before us or whether, instead, they were implicitly rejected on the first appeal. We hold that they are properly here.

*Ameline* directs that where *Booker* issued after a defendant was sentenced but while his appeal was pending and where he raised no challenge to the mandatory Guidelines below, this Court should remand to the district court to determine whether, had the Guidelines been advisory at the time of sentencing, the sentence would have been materially different. *Ameline*, 409 F.3d at 1079. The purpose of the remand is to assist this Court's review of the defendant's *Booker* claim. In these cases, because the defendant did not raise a *Booker*-type claim below, review on appeal is for plain error.[2] *See id.* at 1078. After *Booker*, there is error that is plain if a defendant was sentenced under mandatory Guidelines and had her sentence enhanced on the basis of judge-found facts. The *Ameline* remand helps this Court ascertain whether the error affected substantial rights, by determining whether the sentence would have been different under advisory Guidelines. *See Ameline*, 409 F.3d at 1078-81. Moreover, if the sentence

---

[2]Plain error is "(1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " *Johnson v. United States*, 520 U.S. 461, 467 (1997) (alterations in original) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). If these conditions are met, an appellate court may exercise its discretion to correct the error "only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " *Id.*

would have been materially different had the district court known the Guidelines were advisory, the integrity, fairness, and public reputation of the proceeding — the fourth plain error prong — will have been seriously affected. *Id.* at 1081. For purposes of judicial efficiency, *Ameline* directs that when a district court determines that the defendant's sentence would have been materially different under an advisory Guidelines system, the court can simply vacate the sentence and resentence the defendant on remand treating the Guidelines as advisory. *Id.* at 1080. These are the narrow parameters of an *Ameline* remand; it is not an occasion to begin the sentencing proceedings entirely anew. *See id.* at 1084-85; *see also United States v. Combs*, 470 F.3d 1294, 1297 (9th Cir. 2006) ("The limited [*Ameline*] remand procedure left no room for the district judge to consider new objections to the original sentence — objections defendant could have raised the first time around, but failed to do so.").

**[1]** *Ameline* does not directly address the fate of sentencing issues raised but not decided in the first appeal. Post-*Ameline* cases have treated non-*Booker* sentencing issues raised on appeal in different ways: In some instances, we ruled on these issues before remanding to the district court under *Ameline* on the *Booker* plain error question. *See, e.g.*, *United States v. Fifield*, 432 F.3d 1056 (9th Cir. 2005). In others, as here, we simply remanded under *Ameline* without ruling on the non-*Booker* issues that had been raised initially.

The latter approach recognized that if the defendant is resentenced on remand, other sentencing issues may become moot or change complexion. For example, here, the district judge could have concluded on the *Ameline* remand that, had she known that the Guidelines were not mandatory, she would have sentenced Thornton more than two levels below the Guidelines. If that had happened, then Thornton would have had little reason to continue to pursue his argument about the two-level abuse of trust enhancement. Indeed, as the Supreme Court has recently explained, in some circumstances district

courts have authority under *Booker* to disavow a Guidelines enhancement on policy grounds and refuse to apply it. *United States v. Kimbrough*, ___ U.S. ___, 2007 WL 4292040, at \*14 (Dec. 10, 2007). Had the district court properly done so with respect to a Guidelines enhancement on Thornton's *Ameline* remand, the Guidelines challenge on that ground would have become moot.

**[2]** The failure to address on appeal Thornton's sentencing issues raised before remanding under *Ameline* was therefore in no way indicative of a rejection of his challenges in the first appeal to the Guidelines calculations. *See United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007) ("For the [law of the case] doctrine to apply [and preclude reconsideration of an issue], the issue in question must have been decided explicitly or by necessary implication in the previous disposition.") (quoting *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993)). Instead, the original panel was evidently of the view, as were many other panels of this court ordering *Ameline* remands, that the sentencing challenges were best considered as a whole after the *Ameline* remand, as they might alter after the remand. We therefore do not construe a failure to address these issues on the first appeal as an implied ruling on their merits.

**[3]** Although *Ameline* is not explicit on the matter, it gives no indication that this procedure is inconsistent with its directives. Further, a subsequent case discussing the implications of *Ameline* appears to contemplate this procedure. In *Combs*, we held that our review for "reasonableness" after an *Ameline* remand is confined to determining whether "the district judge properly understood the full scope of his discretion in a post-*Booker* world." 470 F.3d at 1297. This holding was expressly limited, however, to the particulars of Combs' situation, in which "[a]t no time during his first appeal did defendant challenge the reasonableness of his sentence."[3] *Id.* at 1295. This

---

[3]Determination that the district court properly calculated the Guidelines range is part of *Booker*'s reasonableness review. *See Gall v. United States*, ___ U.S. ___, 2007 WL 4292116, at \*7 (Dec. 10, 2007).

limitation suggests that if a sentencing challenge was raised but not decided on the first appeal, it is preserved for full review after an *Ameline* remand. *See also United States v. Williams*, 475 F.3d 468, 476 (2d Cir. 2007) ("*[W]hen we have reached* the Guidelines issues — or other sentencing issues — raised by defendants in their initial appeal, further challenges to our resolution of these issues after a district court has declined to resentence pursuant to *Crosby* will be foreclosed by the law of the case.") (emphasis added).

**[4]** Thus, we now expressly hold that where sentencing issues are raised but not decided in an appeal prior to an *Ameline* remand, those issues are properly before the Court on any subsequent appeal from the *Ameline* remand, along with any challenges to the results of the *Ameline* remand itself.

## B.

**[5]** Thornton challenges the inclusion of the $25 million counterfeit check in the amount of loss enhancement. As he signed a plea agreement expressly agreeing that the total loss was close to $26 million, he affirmatively waived this issue. *See United States v. Olano*, 507 U.S. 725, 732-33 (1993). We therefore do not reach it.

## C.

Thornton also challenges the two-level enhancement for abuse of trust. Thornton did challenge this enhancement at the original sentencing and we review its application.[4]

**[6]** The abuse of trust enhancement applies where the abuse

---

[4]Before *Booker*, we reviewed the application of the abuse of trust enhancement — a mixed question of law and fact — *de novo*. *See United States v. Brickey*, 289 F.3d 1144, 1153 (9th Cir. 2002). Although the same standard of review may well apply after *Booker*, we need not decide the issue. Under any standard of review, the enhancement was not error.

of a position of trust "facilitate[s] significantly the commission or concealment of a crime." USSG § 3B1.3, cmt. background. A position of trust is "characterized by professional or managerial discretion . . . . Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." *Id.*, cmt. n.1 (comparing, i.e., a bank executive to a bank teller). The position need not be that of a fiduciary. *See United States v. Velez*, 185 F.3d 1048, 1051 (9th Cir. 1999) (citing *United States v. Garrison*, 133 F.3d 831, 839 n.18 (11th Cir. 1998)).

**[7]** Thornton does not contest that he held a position of trust with respect to USC by virtue of his position as president of a charitable foundation paid by USC to raise funds for it. Nor does he deny that his abuse of this position of trust allowed him more easily to commit the offenses. For example, he deposited donations made to the foundation directly into his checking accounts, then used some of those funds for his personal use, a diversion of funds that could not have occurred had his financial transactions or those of the foundation been closely supervised.

**[8]** Thornton does argue that when he solicited funds after USC terminated its relationship with his foundation he was no longer in a position of trust. But most of the fraudulent conduct relating to the purportedly charitable foundation took place *before* USC terminated its relationship with Thornton. The enhancement is thus entirely appropriate.

Thornton also contends that the application of both the abuse of trust enhancement and the enhancement for an offense involving a misrepresentation that he was acting on behalf of a charitable organization, USSG § 2F1.1(b)(4), was impermissible double counting. Impermissible double counting "occurs where one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by the applica-

tion of another part of the Guidelines." *United States v. Speelman*, 431 F.3d 1226, 1233 (9th Cir. 2005) (quoting *United States v. Reese*, 2 F.3d 870, 895 (9th Cir. 1993)). There is "nothing wrong with 'double counting' when it is necessary to make the defendant's sentence reflect the full extent of the wrongfulness of his conduct." *Reese*, 2 F.3d at 895.

The enhancement for representing falsely that a defendant is working on behalf of a government agency or charitable organization recognizes that "defendants who exploit victims' charitable impulses or trust in government create particular social harm." *United States v. Romero*, 293 F.3d 1120, 1126 (9th Cir. 2002) (quoting USSG § 2B1.1, cmt. background). The abuse of trust enhancement, in contrast, recognizes that "persons who abuse their positions of trust or their special skills to facilitate significantly the commission or concealment of a crime . . . generally are viewed as more culpable." USSG § 3B1.3 cmt. background.

**[9]** Here, Thornton not only represented that he was working on behalf of a charitable foundation and thereby encouraged contribution from members of the public, he also abused the authority USC entrusted in him as the president of the foundation to facilitate the commission and concealment of his fraud. The false representation that he worked for a charity harmed members of the public; the abuse of his position as the foundation's president harmed USC. As "[t]he two enhancements stemmed from separate concerns," the abuse of trust enhancement was not impermissible double counting. *See United States v. Christiansen*, 958 F.2d 285, 288 (9th Cir. 1992) (enhancements for abuse of trust and more than minimal planning did not constitute impermissible double counting).

### III.

Thornton also challenges the district court's ruling on the *Ameline* remand. We narrowly review a district court's deter-

mination, pursuant to an *Ameline* remand, that the sentence would not have been materially different had the Guidelines been advisory at the time of sentencing. Our review asks only "[w]hether the district judge properly understood the full scope of his discretion in a post-*Booker* world." *Combs*, 470 F.3d at 1297.

Thornton argues that the district court did not properly consider his medical condition and the lack of appropriate care available through the BOP. By failing to grant Thornton's request for an independent medical evaluation, Thornton maintains, the district court did not fully obtain the views of counsel as required by *Ameline*.

**[10]** We disagree. The district court did both obtain and recognize the views of counsel regarding the medical issues. *Ameline* does not require district courts on remand to appoint or consider the evaluation of medical experts when requested by counsel; it simply states that the "views of counsel, at least in writing, should be obtained." 409 F.3d at 1085 (quotation marks omitted). Further, Thornton requested an independent medical examiner only in the event that the district court decide to re-sentence him, not to assist the district court in making the threshold determination to re-sentence.

**[11]** Nor is any other matter relating to Thornton's health properly before us in the present appeal. Thornton did argue at the original sentencing that his physical health was a factor warranting leniency, but did not raise the issue on the first appeal, either in his original brief or in his supplemental brief filed after *Booker*. As noted, an appeal from an *Ameline* remand which does not result in resentencing is limited to the question whether the district judge properly understood the full scope of his post-*Booker* discretion. *Combs*, 470 F.3d at 1296-97. As a consequence, although issues raised but not decided on appeal prior to an *Ameline* remand are preserved, claims that are unrelated to the *Ameline* remand and that were

available but not raised on the first appeal cannot be raised for the first time on the second appeal.[5]

## IV.

For the foregoing reasons, we AFFIRM.

---

[5]Although the district court's failure to respond to Thornton's allegation that the BOP is unable to treat a serious medical condition is troubling, we note that a current BOP policy statement, of which we take judicial notice, indicates the BOP is able to approve and pay for organ transplants at approved transplant centers. Bureau of Prisons, *Program Statement P6031.01: Patient Care*, at 47 (2005). Moreover, an inmate whose serious medical needs are not being met can sue prison officials for Eighth Amendment violations. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Carlson v. Green*, 446 U.S. 14 (1980).