# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3157

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| William Douglas Hampton, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 14, 2001

Filed: August 1, 2001

_____

Before WOLLMAN, Chief Judge, HANSEN, Circuit Judge, and SCHREIER,[1]
District Judge.

_____

WOLLMAN, Chief Judge.

William Hampton appeals his conviction and sentence for four counts of production of child pornography in violation of 18 U.S.C. § 2251(a) and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). We affirm.

_____

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, sitting by designation.

But for the chance intervention of a thief, Hampton's sexual abuse and production of child pornography might well have gone unnoticed and unpunished. In September of 1999, Hampton's home was burglarized and his video camera stolen. The burglar was arrested shortly thereafter on other charges and instructed his mother to sell the camera to raise bail. Inside the camera, its purchaser found a videotaped recording of Hampton sexually abusing a young girl. The purchaser turned the tape over to police, the burglar's mother elicited the address of the burgled house from her son, and the police determined that Hampton, its sole inhabitant, was the man on the tape by comparing it to his driver's license and Department of Revenue photos.

Intending to arrest Hampton, the police knocked on the glass storm door that opened onto a porch at the front of Hampton's home. Hampton answered, leaving the front door open behind him and holding the storm door open while he spoke with police. The police identified themselves and inquired whether he was William Hampton. He denied being William Hampton and said that his name was Stephen Hampton. When the police asked him for identification, he told them that it was inside the house and held the door open to admit them. In the house, he handed over his own identification and admitted that he was William Hampton, whereupon the police informed him that he was under arrest. Hampton then asked to be allowed to secure his home before being taken into custody, and an officer accompanied him while he put away some items and locked the house. While inside the home, the officers observed rooms and items that were shown on the videotape. Because the house also contained children's toys, they inquired whether there were children in the house. Hampton told them that there were not and that the toys were present because he was a "surrogate father" to a four-year-old child. The items the police saw in Hampton's home became the basis for a search warrant that, when executed, led to the discovery of the evidence against Hampton, most notably ten separate tapes documenting his sexual abuse of a

four-year-old girl who spent one night a week with Hampton. The police found no evidence that Hampton had distributed or intended to distribute the tapes , and no other child pornography was found in his home.

Hampton pled guilty to four counts of production of child pornography and one count of possession of child pornography. The district court[2] sentenced him to concurrent 240-month terms of imprisonment on counts one, three and four of the indictment (production), an additional concurrent term of 60 months on count five (possession), and a consecutive term of 53 months on count two (production): in total, 293 months in prison, followed by 3 years of supervised release, and a $500 fine.

## II.

Hampton contests the constitutionality of the federal statute, the validity of the search warrant predicated on information obtained incidental to his arrest, and the district court's sentencing determinations.

### A. Constitutionality of the Statute

Federal jurisdiction over Hampton's crimes derives from the portions of §§ 2251(a) and 2252(a)(4)(B) that criminalize the production and possession of child pornography using materials transported in interstate commerce. Hampton concedes that the videotapes on which he recorded his actions were manufactured outside the state of Missouri. Thus, Hampton, in producing and possessing the tapes, committed federal crimes even though all of his actions took place within Missouri. He contends that, in criminalizing his intrastate conduct, Congress overstepped the constitutional

---

[2]The Honorable Jean C. Hamilton, Chief Judge, United States District Court for the Eastern District of Missouri.

authority granted it by the interstate commerce clause, and that there is therefore no federal jurisdiction over his case. We disagree.

Section 2251(a) states, in relevant part:

> Any person who uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished . . . if the visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means . . . .

Section 2252(a)(4)(B) criminalizes knowing possession of such material.

Hampton acknowledges that we approved § 2252(a)(4)(B) as within Congress's commerce power in United States v. Bausch, 140 F.3d 739, 741 (8th Cir. 1998), but argues that Bausch is no longer good law in light of the Supreme Court's holdings in United States v. Morrison, 529 U.S. 598 (2000), Jones v. United States, 529 U.S. 808 (2000), and United States v. Lopez, 514 U.S. 549 (1995). Since those cases were decided, however, we have held that Bausch continues to control the constitutionality of federal criminalization of child pornography produced with materials that have traveled in interstate commerce and accordingly affirmed a conviction under § 2251(b). United States v. Hoggard, No. 01-1354, 2001 WL 699833 at *2 (8th Cir. June 22, 2001) (upholding conviction for intrastate conduct in permitting minor children to engage in sexually explicit conduct for the purpose of producing a visual depiction where the film and camera used to create the depiction had been transported in interstate commerce). Accordingly, Hampton's constitutional attack on the statute fails.

-4-

## B. Validity of the Search Warrant

Hampton argues that his warrantless arrest in his home was in violation of the Fourth Amendment, and that therefore the evidence obtained pursuant to a search warrant based largely on the observations of police officers in his home to effect the arrest should have been excluded as fruits of the poisonous tree. In Payton v. New York, 445 U.S. 573, 576 (1980), the Supreme Court held that the Fourth Amendment, as incorporated by the Fourteenth Amendment, "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." "While Payton did not deal with the issue of whether an initial consensual entry would justify a subsequent warrantless arrest, we have held that a valid and voluntary consent may be followed by a warrantless in-home arrest." United States v. Briley, 726 F.2d 1301, 1303 (8th Cir. 1984) (citing United States v. Shigemura, 682 F.2d 699, 706 (8th Cir. 1982) and United States v. Ruiz-Altschiller, 694 F.2d 1104, 1106-07 (8th Cir. 1982)). Accordingly, Hampton's arrest was constitutionally valid if he voluntarily and without coercion consented to the officers' entry into his home. See id. at 1304.

Whether Hampton voluntarily consented to the entry is a question of fact to be determined from all the circumstances, and the government bears the burden of showing that the consent was freely given. See id. In this case, not only is there a complete lack of evidence tending to show any use of force, coercion, or deception by police, but what evidence there is indicates that Hampton literally opened the door to admit them into his home. Because Hampton consented to the police entry, his arrest and the ensuing search were therefore valid.

## C. Sentencing Considerations

The district court held extensive evidentiary hearings in the course of taking Hampton's guilty plea and determining his sentence. The evidence submitted at the sentencing hearing established that the child continues to experience psychological and behavioral problems, including public masturbation, confusion of affection and sexual behavior, and a refusal to change soiled underwear, to wipe herself after going to the bathroom, or to urinate.

After determining that Hampton was subject to a two-level upward adjustment for victim restraint under U.S.S.G. § 3A1.3, the district court then departed upward pursuant to U.S.S.G. § 5K2.3, for extreme psychological injury, and U.S.S.G. § 5K2.8, for extreme conduct.

In determining that upward departure was warranted, the court stated:

I think either 5K2.3, by itself, or 5K2.8, by itself, justifies the departure that I'm going to make upwardly. I'm going to depart upwardly six levels. Either one of these, I think, justifies that departure. I'm not assigning a number of levels to either one. I think either one could justify it, and I will impose a sentence along those lines.

Again, I could detail the degradation, and rather than go through a litany, which I think might not even be appropriate in an open courtroom, I base this on what I saw on those tapes, and again, they were corroborated. A lot of those actions were corroborated by statements the child made in therapy. They've been alluded to here in the testimony, and I really think it's not appropriate to detail them, but on that basis, on those tapes is the justification for the departure I'm going to make on that basis.

The court also made clear that it had viewed the tapes found in Hampton's home, and the portion of the sentencing hearing transcript immediately preceding the court's above-quoted statements contains a detailed description of the contents of the tapes.

The district court's six-level upward departure resulted in a total offense level of 38, which carries a guideline range of 235-293 months. Hampton challenges both of the above-described enhancements and contends that the district court failed to give reasons specific enough to justify its sentencing determination.

We review under an abuse-of-discretion standard the district court's decision to depart upward. See United States v. Goings, 200 F.3d 539, 542 (8th Cir. 2000). Departure under U.S.S.G. § 5K2.3 is appropriate when a victim suffered psychological injury "much more serious than that normally resulting from commission of the offense." Departure under U.S.S.G. § 5K2.8 is appropriate where the defendant's actions are "unusually heinous, cruel, brutal, or degrading to the victim." Hampton argues that the tapes constitute an insufficient basis for determining the psychological injury suffered by the victim, that his actions were no more extreme than those already contemplated by the statute, and that the district court relied on the same conduct for both bases of departure and therefore inappropriately "double-counted" it in determining his sentence.

The district court's understandable desire to spare the four-year-old victim resulted in an articulation of reasons that were perhaps less specific than they might have been had the court spelled out in graphic terms that which the tapes reveal. Read in context, however, the court's statement refers to both the tapes and the testimony of the victim's therapist, which together constitute ample evidence of both the victim's ongoing psychological problems and the extreme nature of Hampton's conduct. Nor was there double-counting, both because the two bases for departure encompass different factors (the nature of the conduct and the severity of the victim's psychological response) and because the district court made clear that it believed that

the entire departure was warranted under either section alone. The district court discounted the testimony of Hampton's expert, who had neither met the victim nor viewed any of the ten tapes, that a four-year-old child was unlikely to suffer permanent psychological injuries from repeated and recorded sexual abuse by her "surrogate father," and instead accepted that of the child's therapist, who saw her regularly and whose testimony detailed the child's continuing behavioral problems. It was for the district court to weigh the probative force of the proffered testimony, and, without giving voice to our own skepticism regarding the testimony of Hampton's expert, we have no hesitation in holding that the district court committed no error in accepting the testimony of the government's expert. Accordingly, we conclude that the district court did not abuse its discretion in departing upwards by six levels in imposing sentence.

Hampton also contends that the court erred in assessing the two-level enhancement for victim restraint because the material shown on the tapes does not demonstrate restraint as described in the sentencing guidelines. We review the district court's application of the law to the facts of Hampton's conduct de novo. United States v. Wells, 127 F.3d 739, 744-45 (8th Cir. 1997). "Physically restrained," as defined by U.S.S.G. § 1B1.1 comment. (n.1(i)), means "the forcible restraint of the victim such as being tied, bound, or locked up." At least one of the tapes shows the child entirely encased in a pillow case. A victim so encased is at least as restrained as one who is "tied." We are not persuaded by Hampton's argument that the victim's participation was willing, whatever meaning may be assigned that concept in reference to the actions of a four-year-old child who had been subjected to repeated sexual abuse by an authority figure. Accordingly, the district court did not err in concluding that Hampton's conduct warranted the two-level enhancement.

We find Hampton's remaining sentencing arguments to be without merit.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.