**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James Lee WRIGHT, Defendant–
Appellant.**

**United States of America,
Plaintiff–Appellee,**

v.

**Tracey Lynn Wright, Defendant–
Appellant.**

**Nos. 03–30142, 03–30158.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 2004.

Filed June 15, 2004.

Omodare Jupiter, Federal Public Defender's Office, Seattle, WA, for defendant-appellant James Wright.

Zenon P. Olbertz, Law Office of Zenon Peter Olbertz, Tacoma, WA, for defendant-appellant Tracey Wright.

John McKay, United States Attorney, Seattle, WA, for the plaintiff-appellee.

Kathryn A. Warma, Assistant United States Attorney, Seattle, WA, for the plaintiff-appellee.

Before: D.W. NELSON, KLEINFELD, and FISHER, Circuit Judges.

D.W. NELSON, Senior Circuit Judge:

Defendant James Wright appeals his 15–year sentence for the production of material involving the sexual exploitation of his 11–month old son. His wife Tracey Wright appeals her 20–year sentence for the possession and receipt of material involving the sexual exploitation of children. They both challenge the district court's 4–level upward departure under U.S.S.G. § 5K2.8 for extreme conduct. They also challenge the district court's application of the 2–level vulnerable victim adjustment, U.S.S.G. § 3A1.1. Tracey Wright separately claims that the court improperly used her relevant conduct—which includes the production of images of her husband engaging in sexually explicit conduct with their 3–year old son, a 17–month old girl, a 3–year old girl, and a 13–year old girl—to apply U.S.S.G. § 2G2.2(c)'s cross-reference to U.S.S.G. § 2G2.1. We hold that the district court did not err in calculating the Wrights' sentences.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Both of the Wrights were indicted for crimes involving the sexual exploitation of children in August 2002. With the government's agreement to drop related receipt and possession charges, James ultimately pleaded guilty to one count of production of material involving the sexual exploitation of children, in violation of 18 U.S.C.

---

1. The Wrights were co-defendants of Donald Keffler, whose case—*United States v. Keffler,* No. 03–30155—has been resolved in an unpublished memorandum disposition filed simultaneously with this opinion. Donald Keffler was convicted of 6 counts of production of material involving the sexual exploitation of children. All but one of the production counts were based on Keffler's production of images depicting either himself or James Wright engaging in sexually explicit conduct with the Wrights' children.

§ 2251. The offense conduct that supports this count consists of James's production of images of himself engaging in sexually explicit conduct with his 11–month old son. According to the pre-sentence report, "[t]he depictions consisted of actual and simulated sexual intercourse, including genital-genital, oral-genital, and anal-genital actual and simulated sexual intercourse." The images produced show James inserting his erect penis into the rectum and mouth of his 11–month old son.

At the sentencing hearing, the district court applied U.S.S.G. § 2G2.1 (2002) to reach a base offense level of 27 for James. The court then applied a 4–level increase under § 2G2.1(b)(1)(A), because the victim was under 12 years old. The court applied a 2–level increase under § 2G2.1(b)(2) because James was the parent of the minor victim. The court also applied a 2–level vulnerable victim adjustment under U.S.S.G. § 3A1.1(b)(1), and a 4–level upward departure under U.S.S.G. § 5K2.8 for extreme conduct. After decreasing James's offense level by 3 points because of his early acceptance of responsibility, and further reducing his sentence under U.S.S.G. § 5K1.1 by 5 years because of his substantial cooperation, the court sentenced James to 15 years.

Tracey pleaded guilty to two counts for the receipt and possession of material involving the sexual exploitation of minor children, in violation of 18 U.S.C. § 2252. Tracey admitted in her plea agreement that she had received numerous computer files that had traveled in interstate commerce depicting minor children engaging in sexually explicit conduct. Her revised pre-sentence report and plea agreement indicate that she possessed on the hard drive of her computer over 4,000 ".jpg" files containing these sexually explicit images. Authorities also found that Tracey's hard drive contained visual depictions of her sons, at the time 11–months and 3–years old, engaging in sexually explicit conduct with her husband James and co-defendant Donald Keffler.

The district court selected U.S.S.G. § 2G2.2 (2002) as Tracey's starting guideline provision. On the basis of her relevant conduct, including the undisputed fact that Tracey took photographs of her husband engaged in sexually explicit conduct with at least one of their two minor sons and at least three minor females between the ages of 17 months and 13 years, the court then applied § 2G2.2(c)'s cross-reference to § 2G2.1.[2] Tracey's sentence was therefore computed, like her husband's, using § 2G2.1's base offense level of 27.

The district court applied the same adjustments under § 2G2.1 and § 3A1.1(b)(1) to Tracey's sentence as it did to James's. The court also applied a 4–level § 5K2.8 upward departure for extreme conduct, decreased Tracey's base offense level by 3 for her early acceptance of responsibility, and sentenced her to 20 years.

## STANDARD OF REVIEW

Before the enactment of the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub.L. No. 108–21, 117 Stat. 650 (2003), we reviewed guideline departures for an abuse of discretion. Section 401(d) of the PROTECT Act now requires that we review de novo the propriety of the district court's departures. *See* 18 U.S.C. § 3742(e) (2003). The PRO-

**2.** U.S.S.G. § 2G2.2(c)(1) states that, "If the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, apply § 2G2.1 . . . if the resulting offense level is greater than that determined above."

TECT Act applies retroactively to the Wrights' appeals even though they were pending on the date of the Act's enactment. *See United States v. Phillips,* 356 F.3d 1086, 1098–99 (9th Cir.2004), *amended by,* 367 F.3d 846 (9th Cir.2004).

While the district court's construction and interpretation of the sentencing guidelines is reviewed de novo, we review the "application of the Guidelines to the facts of a particular case … for an abuse of discretion." *United States v. Rearden,* 349 F.3d 608, 615 (9th Cir.2003). The application of the vulnerable victim adjustment is therefore reviewed for abuse of discretion. *See United States v. Mendoza,* 262 F.3d 957, 960(9th Cir.2001); *United States v. Weischedel,* 201 F.3d 1250, 1255 (9th Cir.2000). We review the district court's findings of fact for clear error. *See United States v. Peters,* 962 F.2d 1410, 1416 (9th Cir.1992).

## DISCUSSION

### I. UPWARD DEPARTURE: EXTREME CONDUCT

The Wrights challenge the district court's decision to depart upward under U.S.S.G. § 5K2.8. They argue that their offense conduct was well within the heartland of the applicable guideline and was not extreme enough to warrant departure. The district court properly concluded otherwise.

### A. The district court decision

While "[t]he district court's understandable desire to spare the … victim[s] resulted in an articulation of reasons that were perhaps less specific than they might have been had the court spelled [them] out in graphic terms," *United States v. Hampton,* 260 F.3d 832, 836 (8th Cir.2001), the court indicated that it had viewed the visual depictions of the sexually explicit conduct in order to understand the extent and severity of the crimes. As in *Hampton,* the court confirmed that those images supplied "ample evidence" of the extreme nature of the defendants' conduct. *See id.*

The district court determined that James's conduct, excluding that learned of during his proffer, fell out of the heartland of the production offense and supported a finding of extreme conduct involving "unusually heinous, cruel, brutal, or degrading" conduct. U.S.S.G. § 5K2.8. Despite its reluctance to publicly elaborate on the full details of the crimes, the district court's decision was clearly based on the specific facts presented.

The district court also determined that Tracey's conduct merited an upward departure under § 5K2.8. It based its decision on the recommendations in the revised pre-sentence report, stating that "[t]he defendant actively participated in all of these [sic] very troubling sexual conduct, and actually filmed—took pictures of much of what was happening. I'm satisfied that the … 5K2.8 guideline applies."

Although the district court did not explicitly include in its heartland analysis the finding that defendants' conduct differed from other offenders, the pre-sentence reports for both defendants specifically state that, "According to the investigating case agent, the instant offense is one of the worst child pornography cases she has ever seen in terms of the volume and nature of the pornography." *Cf. United States v. Thompson,* 315 F.3d 1071, 1074–75 (9th Cir.2002) (vacating sentence where district court did not make a comparison *and* there was little in the record to show that Thompson's conduct differed from other offenders).

### B. Defendants' conduct falls outside of the heartland

In reviewing the district court's upward departure, we must first deter-

mine whether the basis for the departure was already accounted for by the offense guideline. *See* 18 U.S.C. § 3553(b)(2)(A)(i) (authorizing a departure where the "court finds that there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence greater than that described"); *see also United States v. Sablan*, 114 F.3d 913, 916–17(9th Cir.1997). In order to consider a factor accounted for in the guidelines, it must be "present to an exceptional degree or in some other way make[ ] the case different from the ordinary case where the factor is present." *United States v. Semsak*, 336 F.3d 1123, 1126 (9th Cir.2003) (quoting *Koon v. United States*, 518 U.S. 81, 96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)).

The Wrights' argument is premised on the assertion that crimes involving the production of material involving the sexual exploitation of children are by their nature so "extreme" that the corresponding guideline necessarily encompasses their conduct in this case. This theory is belied, however, by *United States v. Chatlin*, 51 F.3d 869, 873 (9th Cir.1995), in which the defendant pleaded guilty to the sexual abuse of a minor under 18 U.S.C. § 2243(a), and we held that on remand a § 5K2.8 departure would be appropriate due to the type of sexual abuse inflicted.

Furthermore, this court has previously approved of upward departures in cases involving serious crimes such as second-degree murder and vehicular involuntary manslaughter. In *United States v. Roston*, 986 F.2d 1287, 1293 (9th Cir.1993), we held that the district court had authority to depart under § 5K2.8 when the defendant, who was convicted for second-degree murder, "cruelly killed his wife of nine days." *Id.* The vicious murder, which took place during the couple's honeymoon on the deck of a cruise ship and was perpetrated for no apparent reason, went beyond the "circumstance of intentional killing [that] must have been taken into consideration by the Sentencing Commission." *Id.; see also United States v. Roston*, 168 F.3d 377 (9th Cir.1999).

In *Semsak*, this court affirmed the application of a 4–level upward departure under U.S.S.G. § 5K2.14 to the sentence of a defendant truck driver who pleaded guilty to vehicular involuntary manslaughter. 336 F.3d at 1124–25. The defendant had been driving an 18–wheel trailer with a blood alcohol level of 0.17, nearly twice the legal limit in the state, when he hit and crushed a car and its driver. *Id.* at 1124. The district court applied U.S.S.G. § 2A1.4 and increased the base offense level by 4 because defendant's conduct of driving drunk was reckless and not merely criminally negligent. *See id.* at 1125. On top of that adjustment, the court also applied the § 5K2.14 departure, which provides for an increase "if national security, public health, or safety was significantly endangered." *Id.* at 1125–26.

Semsak argued that because drunk reckless driving is always a threat to public safety, the guideline's base offense level fully encompassed his conduct. *Id.* at 1126. The district court found, however, that the offense guideline did not encompass " 'reckless conduct with an 80,000 pound vehicle.' " *Id.* at 1125. On appeal, the court agreed that Semsak's behavior "pushed the upper limits of recklessness." *Id.* at 1126. In reaching this conclusion it relied on *United States v. Whiteskunk*, 162 F.3d 1244 (10th Cir.1998), in which the Tenth Circuit reasoned that recklessness "covers a broad spectrum of behavior ... [and] district courts should be free to depart if the facts indicate 'a degree of recklessness that falls on the periphery of

reckless conduct.' " *Semsak,* 336 F.3d at 1126 (quoting *Whiteskunk,* 162 F.3d at 1251).

As in *Semsak,* James's conduct falls outside of, or at a minimum, on the periphery of § 2G2.1. The charged offense was the production of sexually explicit materials—a crime that "covers a broad spectrum of behavior." *Id.; see also* 18 U.S.C. §§ 2251, 2256(sexually explicit conduct ranges from actual or simulated sexual intercourse to masturbation to sadistic abuse to "lascivious exhibition of the genitals or pubic area of any person"). In this case, James could have been sentenced for the production of material involving the sexual exploitation of a minor without repeatedly engaging in various forms of sex with an 11–month old infant. *See Semsak,* 336 F.3d at 1127(reasoning that the base offense level did not fully capture the wrongfulness of Semsak's behavior because he could have been sentenced for reckless involuntary manslaughter even if he had not been driving an 18–wheel truck in such an extremely hazardous way); *see also United States v. Wiegand,* 812 F.2d 1239, 1241(9th Cir.1987) (defendant convicted under 18 U.S.C. §§ 2251, 2252 for posing two girls, 17 and 10 years old, for photographs focusing on their genitalia).

In particular, James engaged in anal intercourse with his minor son to produce the images. This court has found before that vaginally and anally penetrating a young child "necessarily hurt[s] the child." *Rearden,* 349 F.3d at 615. This court has also held that "extreme conduct [under § 5K2.8] may be established by a showing of anal intercourse, which is a degrading form of sexual abuse." *Chatlin,* 51 F.3d at 872–73.

We hold that James's production of images showing his actual anal penetration of

and oral copulation with the infant is an aggravating factor that is "present to an exceptional degree," meriting an upward departure under § 5K2.8. *Koon,* 518 U.S. at 96, 116 S.Ct. 2035. *See also United States v. Ellis,* 935 F.2d 385, 396 (1st Cir.1991) (holding that sexual abuse, including fellatio, cunnilingus, and digital penetration, warranted upward departure when performed on a child victim).

 The application of § 5K2.8 to Tracey's sentence similarly was not in error. Her factually undisputed relevant conduct confirms that she took pictures of James anally penetrating their 3–year old son with his penis. In addition, she took a series of photographs that include images of James anally penetrating a 3–year old girl with his fingers. She also took a series of photographs labeled "picnic" that depict James anally and vaginally penetrating a 17–month old girl. According to her pre-sentence report, that series includes "an image of [the 17–month old girl's] vaginal area with semen on it."

Not only was Tracey present, but she documented these numerous instances of painful abuse. While she herself did not commit any of the sexually explicit activity, she permitted or caused at least five children to be subjected to sexually explicit conduct for the purpose of producing a visual depiction. Such repeated participation in and production of painful, degrading, and sexually explicit materials involving minors goes beyond the conduct contemplated by the guideline.[3]

## II. VULNERABLE VICTIM ADJUSTMENT

 The defendants also argue that it was legal error for the district court to apply the vulnerable victim adjustment. Commentary to U.S.S.G. § 3A1.1 states

---

**3.** Neither defendant challenges the extent of the departure.

that a vulnerable victim is a person "unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct."[4] U.S.S.G. § 3A1.1, cmt. n. 2. It also states that the guideline should not be applied "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline." *Id.* It offers the following example: "[I]f the offense guideline provides an enhancement for the age of the victim, [the vulnerable victim guideline] would not be applied unless the victim was unusually vulnerable for reasons unrelated to age." *Id.* This guideline commentary is binding. *See United States v. Wetchie,* 207 F.3d 632, 634 n. 2 (9th Cir.2000) (citing *Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993)).

The district court applied the vulnerable victim adjustment to James because "of the extremely young age of some of the children involved, the extremely small physical size, the extreme vulnerability of these children, and the fact that they were made available to Mr. Keffler as well." In support of its application of the vulnerable victim adjustment to Tracey, the court adopted the factors it had used to apply the adjustment to co-defendant Donald Keffler: "the extraordinary young age, no child victim older than 4, the small physical size, and the vulnerability of these children." Although the court did not make identical recitations in both cases, it is apparent that it was thinking generally of the same factors given that the Wrights, along with Keffler, were sentenced at the same hearing and the crimes involved shared victims.

Defendants aver that the district court's use of the extreme youth and extremely

small physical size factors was impermissible under § 3A1.1 because both factors are related to age, and the victims' age was already accounted for by the court's application of § 2G2.1(b)(1)(A). Section 2G2.1(b)(1) provides for a 4-level increase if the victim is under the age of 12, and a 2-level increase if the victim is between the ages of 12 and 16. The Wrights also contend that consideration of the fact that the victims were "passed on" to Keffler double-counts parental control, which was covered by the court's application of § 2G2.1(b)(2).

A. *Extreme youth & extremely small physical size*

 This court has indicated that when the offense guideline already incorporates the age of the victim, the application of § 3A1.1 is improper if "age" per se is the sole factor supporting the adjustment:

> [A]lthough any victim of abusive sexual contact with a minor might be described as vulnerable on account of her minority, her age does not make her any more vulnerable than other victims of this offense; enhancement of the defendant's sentence *based only on the victim's status as a minor* would therefore be inappropriate.

*Wetchie,* 207 F.3d at 634 n. 4 (emphasis added). It is also inappropriate to include the mere status of age as one of the factors supporting a finding of unique and particular susceptibility when the offense guideline incorporates age. *See id.* at 634 n. 3 (stating that age could not be considered but applying the vulnerable victim adjustment nonetheless because the 11–year old child was asleep); *see also United States v. Archdale,* 229 F.3d 861, 869 n. 5

---

**4.** A determination of particular susceptibility involves consideration of the characteristics of the victim, the victim's reaction to the

criminal conduct, and the circumstances surrounding the criminal act. *See Peters,* 962 F.2d at 1417.

(9th Cir.2000) (stating that age could not be considered but applying the vulnerable victim adjustment because the 12–year old child was cognitively delayed).

Defendants' theory is that because they received the 4–level adjustment under § 2G2.1(b)(1)(A) for a victim under 12, the vulnerable victim application note prohibits another 2–level adjustment on account of the victims' infancy. We reject this argument because the victims' vulnerability is not fully "incorporated" in the victim–under–12 adjustment. See U.S.S.G. § 3A1.1, cmt. n. 2.

Most children under 12 are well beyond the infancy and toddler stages of childhood during which they are the most vulnerable. The guideline adjusting for victims under 12 does not take these especially vulnerable stages of childhood into account, so there is no double-counting of age in considering infancy or the toddler stage as an additional vulnerability. Though the characteristics of being an infant or toddler tend to correlate with age, they can exist independently of age, and are not the same thing as merely not having "attained the age of twelve years," the criterion for the 4–level increase in § 2G2.1(b)(1)(A).

In this case, it is without doubt that the victims were unusually vulnerable as a matter of fact, "i.e., less able to resist than the typical victim of the offense of conviction." Wetchie, 207 F.3d at 634. In particular, the 11–month old child most likely could not talk and he could not walk away from the abuse. Generally, infants at 12 months are only able to rise and walk at most a few steps alone. See Nelson Textbook of Pediatrics 20–22 (Richard E. Behrman et al. eds., 14th ed.1992); see also Basil J. Zipelli & Holly W. Davis, Atlas of Pediatric Physical Diagnosis 62 (4th ed.2002) (stating that at the median age of 11 months a child can walk three steps alone). By 18 months, an infant typically has a vocabulary of only 18 words. See Nelson Textbook of Pediatrics, 20–22. While we focus here on these physical characteristics and markers of cognitive development, we also recognize that there are unique concerns about the moral and psychological development of a child who is sexually assaulted at such a young age.

These attributes of infancy and the toddler stage compel the conclusion that the district court did not err as a matter of law in applying the vulnerable victim adjustment. The extreme youth and small physical size factors challenged by the Wrights account for traits and characteristics— such as an inability to communicate, an inability to walk, and as this court noted in Rearden, increased pain upon sexual penetration—that roughly correlate with age, but are not necessarily related to age. For example, in United States v. Veerapol, 312 F.3d 1128 (9th Cir.2002), we determined that an adult woman was unusually vulnerable to the crime of involuntary servitude because she could not speak English. Id. at 1133. In that case the victim was unable to communicate, and yet was not a child.

Just as the traits and characteristics of extreme youth and small physical size are not necessarily limited to minors, those same attributes do not necessarily apply to all minors. In United States v. Gawthrop, 310 F.3d 405 (6th Cir.2002), the defendant was apprehended because his 3–year old grandchild was able to tell her father that her grandfather made her put his penis in her mouth. Id. at 407.

Because the traits and characteristics associated with infancy and the toddler stage can exist independently of age, and because the factors of extreme youth and small physical size recognize a vulnerability beyond "age" per se, we hold that the district court did not contravene the commentary of § 3A1.1. It correspondingly did

not engage in any impermissible double-counting of age under the guidelines.

### B. *"Passing on"*

 The Wrights do not challenge the court's finding that the fact that the victims were "passed on" to co-defendant Keffler rendered them vulnerable. Rather, they claim the court erred as a matter of law by impermissibly double-counting their parental status. *See* U.S.S.G. § 2G2.1(b)(2).

While the "passing on" factor is related to parental control, taking it into account here was not error because it was possible for the Wrights to have received the parental adjustment under U.S.S.G. § 2G2.1(b)(2) without having passed their son on to others for more abuse. *See United States v. Reese,* 2 F.3d 870, 895 (9th Cir.1993) (defining impermissible double-counting as occurring when "one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by the application of another part of the Guidelines"). Therefore, use of this factor in the vulnerable victim assessment captures " 'the full extent of the wrongfulness of [defendants'] conduct' " in this case. *Archdale,* 229 F.3d at 869 (quoting *Reese,* 2 F.3d at 895).

### C. *Conclusion*

The district court in this case was faced with the task of recognizing the extreme vulnerability of these victims while not contravening the mandate of the Sentencing Commission. The court did not rely on age alone; rather, it recited factors in addition to and independent of age itself.[5] The imperfect correlation between age and some of the factors, and the fact that the parents supplied child victims to Keffler, are dispositive here.

Further compelling this conclusion is our recognition that the offense-specific enhancement in § 2G2.2(b)(1)(A) for victims under 12 does not fully account for the traits and characteristics that make the Wrights' victims uniquely vulnerable. Clearly, not all children under 12 are unable to walk or talk, or discern the difference between assault and affection. The court's application of the vulnerable victim adjustment here was attuned to that reality, and is not in error.

Ultimately, we must recognize that the victims in this case are the paradigmatic "vulnerable victims." Their "increased susceptibility encourage[d] criminal conduct by making it easier to commit, resulting in criminal acts that might not have taken place at all if not for the victim's heightened vulnerability." *Wetchie,* 207 F.3d at 634.

### III. APPLICATION OF U.S.S.G. § 2G2.2(c)'s CROSS–REFERENCE

 Tracey additionally argues that her base offense guideline should have been set at 17 under § 2G2.2, which applies to the charges to which she pleaded guilty. However, § 2G2.2 contains a cross-reference that provides that § 2G2.1 should be applied if "the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual

---

**5.** Neither party specifically argues that the court erred in its application of the vulnerable victim adjustment when it included the factor that "no child victim was older than 4." We do not express an opinion on the use of this factor because even if the factor is based on the status of age alone, we are assured that the district court would have imposed the same sentence "absent reliance on the invalid factor[]." *Koon,* 518 U.S. at 113, 116 S.Ct. 2035.

depiction of such conduct." U.S.S.G. § 2G2.2(c)(1). Under U.S.S.G. § 1B1.3(a), cross-references "shall" be determined on the basis of relevant conduct. *See United States v. Romero,* 293 F.3d 1120, 1124 n. 3 (9th Cir.2002). Relevant conduct is defined as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ... that occurred during the commission of the offense of conviction." U.S.S.G. § 1B1.3(a)(1).

After selecting the guideline that matched her offense, § 2G2.2, the district court looked to Tracey's relevant conduct to "capture the real offense behavior." *Romero,* 293 F.3d at 1124. Here, the relevant and factually undisputed conduct showed that Tracey participated in the production of visual depictions of the sexual exploitation of children, and the court properly applied the cross-reference. The fact that Tracey was not originally charged for this conduct is of no consequence. *See United States v. Morgan,* 164 F.3d 1235, 1238–39(9th Cir.1999) (affirming the use of uncharged relevant conduct to apply cross-reference).

## CONCLUSION

For the foregoing reasons the defendants' sentences are AFFIRMED.