**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr><td>

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

MAURICE LEROME SMITH,
*Defendant-Appellant*.

</td><td>

No. 11-50549

D.C. No.
3:11-cr-00471-
BEN-1

OPINION

</td></tr>
</table>

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Submitted February 7, 2013[*]
Pasadena, California

Filed June 26, 2013

Before: Consuelo M. Callahan, Sandra S. Ikuta,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Ikuta

---

[*] The panel unanimously concludes that this case is suitable for decision without oral argument. Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Criminal Law

The panel affirmed a sentence imposed in connection with a conviction for sex trafficking of children by force, fraud, or coercion under 18 U.S.C. § 1591(a)(1) and (b)(1).

The panel rejected the defendant's contention that an enhancement for exerting undue influence on a minor under U.S.S.G. § 2G1.3(b)(2)(B) was impermissible double-counting, where the district court calculated a base offense level under U.S.S.G. § 2G3.1(a)(1) for the defendant's violation of § 1591(b)(1), which has an element that the defendant used "force, fraud, or coercion."

The panel also rejected the defendant's challenge to the district court's imposition of an enhancement for an organizing role under U.S.S.G. § 3B1.1(c). The panel reasoned that a woman who knowingly abetted the defendant's child sex trafficking offense qualified as a "participant" under § 3B1.1, and the defendant was therefore responsible for "organizing" her for the purpose of carrying out that criminal act.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

John Lanahan, San Diego, California, for Defendant-Appellant.

Laura E. Duffy, United States Attorney; Bruce R. Castetter and Alessandra P. Serano, Assistant United States Attorneys, San Diego, California, for Plaintiff-Appellee.

**OPINION**

IKUTA, Circuit Judge:

Maurice Lerome Smith appeals several sentencing enhancements that he received in connection with his conviction for sex trafficking of children by force, fraud, or coercion under 18 U.S.C. § 1591(a) and (b)(1). We affirm.

**I**

Smith was the owner of a San Diego-area window washing company. But for many years, he had also been involved in a much darker business: running a prostitution ring. In October 2009, a 17-year-old girl named M.S. contacted Smith by email, looking for a job. M.S. was homeless and living in a tent behind a motorcycle junkyard where she worked. M.S. knew Smith owned a window washing company, but suspected that he was also involved in some kind of "hustle," such as selling drugs or fake purses. M.S. wanted to participate in Smith's hustle, and after meeting Smith for coffee several times, began working for his window washing company. M.S. told Smith she was 17 because he needed to know her age to get a work permit.

Several months later, in January 2010, M.S. moved in with Smith and began having sexual relations with him. Shortly thereafter, Smith brought a woman named Michelle back to the house, who asked about M.S.'s age, pointedly commenting on how young she looked. In reaction to Michelle's question, Smith punched Michelle in the face, knocking her unconscious. M.S. then learned that Smith was a pimp. Smith told M.S., "Bitch, I own you," and immediately forced her to work as a prostitute in his ring.

Smith had Michelle train and accompany M.S. on her initial assignments to San Diego hotels, telling M.S. that Michelle's "got this, she'll show you, she's been doing it a really long time." Michelle subsequently accompanied M.S. to hotels and posted some internet ads for her. Smith had several other women working as prostitutes for him at that time, but Michelle was his "bottom bitch," defined by a government expert as the pimp's most trusted prostitute, responsible for recruiting, collecting money, and possibly disciplining other prostitutes.

Smith regularly beat and threatened M.S. from February 2010 onward, and M.S. tried to leave him five or six times. Whenever M.S. tried to leave, Smith's tactics varied between cajoling her to stay, using statements like "no, baby, I love you, don't leave, you don't need to leave, we can work this out, it's not that big of a deal," to threatening her, using statements like "bitch, you ain't going nowhere." If M.S. pushed the issue, "there were physical altercations." Although Smith did let M.S. go in July 2010, the reprieve was short-lived. In September 2010, Smith saw M.S. walking on the street and demanded that she get into his car or she would be "in pieces in the trunk." Shortly after Smith forced M.S. to resume working as a prostitute for him, however, M.S.

started a noisy dispute with a client in hopes that he would call the police. The client did so, and once the police arrived, M.S. told them she had been forced to work for Smith.

After his arrest, indictment and trial, Smith was convicted by a jury of sex trafficking of children by force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a) and (b)(1).[1] In answering a special interrogatory on the verdict form, the jury found that Smith "knew that force, fraud, or coercion would be used to cause the person to engage in a commercial sex act," and that he "knew, or was in reckless disregard, that a person who had not attained the age of 18 years would be caused to engage in a commercial sex act."[2]

---

[1] 18 U.S.C. § 1591(a) provides that "[w]hoever knowingly – (1) in or affecting interstate commerce . . . recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

18 U.S.C. § 1591(b) provides that "[t]he punishment for an offense under subsection (a) is – (1) if the offense was effected by means of force, threats of force, fraud, or coercion . . . or by any combination of such means . . . by a fine under this title and imprisonment for any term of years not less than 15 or for life; or (2) if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, or obtained had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title and imprisonment for not less than 10 years or for life."

[2] Smith was also charged and convicted for being a felon in possession of a firearm, which is not relevant to this appeal.

The pre-sentence report identified Smith's base offense level as 34, as prescribed by § 2G1.3(a)(1) of the Sentencing Guidelines for violations of 18 U.S.C. § 1591(b)(1).[3]  It also recommended a two-level enhancement under U.S.S.G. § 2G1.3(b)(2)(B) for exerting undue influence on a minor, and recommended a two-level enhancement under U.S.S.G. § 3B1.1(c) for an organizing role.  Smith contested both proposed sentencing enhancements, arguing that the § 2G1.3(b)(2)(B) enhancement was duplicative of the elements of his conviction, and that there was no basis for the § 3B1.1(c) enhancement because he did not supervise or organize anyone but M.S.  The district court rejected Smith's objections, stating that "[t]here is no question that you used undue influence.  I heard the victim testify.  And there is no question about your role in this offense.  It is pretty obvious that, sir, you have been involved in this activity for a long, long time."  The court sentenced Smith to 360 months' imprisonment, followed by five years' supervised release. Smith timely appealed.

## II

In determining whether the district court committed procedural error, we review the district court's interpretation of the Sentencing Guidelines de novo and its factual findings for clear error.  *See United States v. Swank*, 676 F.3d 919, 921 (9th Cir. 2012).[4]

---

[3] U.S.S.G. § 2G1.3(a)(1) provides for a base offense level of 34 "if the defendant was convicted under 18 U.S.C. § 1591(b)(1)."

[4] There is "an intracircuit conflict as to whether the standard of review for application of the Guidelines to the facts is de novo or abuse of

**A**

We begin with Smith's challenge to the enhancement for undue influence under § 2G1.3(b)(2)(B). This section provides for a two-level upward adjustment if a participant "unduly influenced a minor to engage in prohibited sexual conduct." *Id.* Smith argues that this two-level increase for undue influence under § 2G1.3(b)(2)(B) was impermissible double-counting because the court calculated a base offense level of 34 under § 2G1.3(a)(1) for his violation of § 1591(b)(1), which has as an element that the defendant used "force, fraud, or coercion." Because a person using "force, fraud, or coercion" against a minor would necessarily have "unduly influenced" the minor, Smith asserts, the § 2G1.3(b)(2)(B) enhancement impermissibly punished him for conduct already included in the base offense level.

As a general rule, it is appropriate for a court to consider all applicable Guidelines provisions in calculating the guidelines range for an offense. In particular, the Sentencing Guidelines contemplate that courts will apply all applicable specific offense characteristics to enhance the base offense level. *See* § 1B1.1(a)(2); *see also United States v. Williams*, 693 F.3d 1067, 1074 (9th Cir. 2012). Indeed, the Guidelines instructions direct a court to apply provisions even from different chapters of the Guidelines Manual in calculating the points applicable to a single offense, because "[a]bsent an instruction to the contrary, enhancements under Chapter Two, adjustments under Chapter Three, and determinations under Chapter Four are to be applied cumulatively," and "may be triggered by the same conduct." § 1B1.1 cmt. 4(B).

discretion," *see Swank*, 676 F.3d at 921–22, but this standard of review is not at issue here.

In accord with these instructions, we have long held that "the Sentencing Commission understands double counting and 'expressly forbids it where it is not intended.'" *United States v. Rosas*, 615 F.3d 1058, 1065 (9th Cir. 2010) (quoting *United States v. Reese*, 2 F.3d 870, 894 (9th Cir. 1993)); *see also United States v. Vizcarra*, 668 F.3d 516, 518 (7th Cir. 2012) (under § 1B1.1 cmt. 4(B), double counting is the "default rule"). As the Guidelines Manual demonstrates, the Commission has in fact done this. Within any offense guideline, for example, if a single specific offense characteristic subsection lists alternative adjustments, district courts are to pick "only the one that best describes the conduct." § 1B1.1 cmt. 4(B). The Guidelines Manual also spells out numerous instances in which a particular provision should not be applied to the same conduct as another provision. *See Vizcarra*, 668 F.3d at 521.

We have also inferred that the Commission would not intend courts to apply a Guidelines provision that would "increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Holt*, 510 F.3d 1007, 1011 (9th Cir. 2007). However, "when each invocation of the behavior serves a unique purpose under the Guidelines," we conclude that the Commission "authorized and intended" the cumulative application of both provisions. *Id*.; *see, e.g.*, *United States v. Stoterau*, 524 F.3d 988, 1001 (9th Cir. 2008) (applying two enhancements to same conduct permissible because they account for "different aspect of the harms" caused by the defendant's conduct); *United States v. Thornton*, 511 F.3d 1221, 1228 (9th Cir. 2008) (applying two enhancements to same conduct permissible because each "stemmed from separate concerns").

We have routinely concluded that two Guidelines provisions serve unique purposes when applied cumulatively.[5] In *United States v. Wright*, for instance, we considered whether it was permissible to apply both an adjustment for a vulnerable victim under 12 years old and an enhancement for the same victim's extreme youth and small physical size. 373 F.3d 935, 942–43 (9th Cir. 2004). Because the enhancement for the victim's extreme youth and small physical size addressed characteristics such as an inability to communicate, an inability to walk, and increased pain upon sexual penetration that "correlate with age, but are not necessarily related to age," we concluded that the two provisions served unique purposes, and therefore both could be applied to a defendant whose victim was his 11-month old son. *Id.* at 943; *see also Holt*, 510 F.3d at 1011 (citing *Wright*, 373 F.3d at 943–44). Similarly, in *Williams*, we considered whether a base offense level that deals with "offenses of extortion by force, threat of force, or serious damage" was duplicative of an enhancement for a crime that "involved an express or implied threat of death, bodily injury, or kidnapping." 693 F.3d at 1074. Because it was possible to engage in a crime involving force, such as a crime resulting in damage to property, without being subject to the enhancement, we held that applying both provisions was

---

[5] *See, e.g.*, *Williams*, 693 F.3d at 1074; *United States v. Lynn*, 636 F.3d 1127, 1138 (9th Cir. 2011); *United States v. Lindsey*, 634 F.3d 541, 556 (9th Cir. 2011), *cert. denied*, 131 S. Ct. 2475, (2011); *United States v. Albritton*, 622 F.3d 1104, 1108 n.4 (9th Cir. 2010); *United States v. Gallegos*, 613 F.3d 1211, 1216 (9th Cir. 2010); *United States v. Laurienti*, 611 F.3d 530, 554 (9th Cir. 2010); *United States v. Pham*, 545 F.3d 712, 718 (9th Cir. 2008); *Stoterau*, 524 F.3d at 1001; *Holt*, 510 F.3d at 1011; *Thornton*, 511 F.3d at 1228; *United States v. Cabaccang*, 481 F.3d 1176, 1186 (9th Cir. 2007); *United States v. Wright*, 373 F.3d 935, 944 (9th Cir. 2004).

permissible. *Id.*; *see also United States v. Laurienti*, 611 F.3d 530, 555 (9th Cir. 2010) (because base offense level did not "necessarily include" the conduct for which defendant received an enhancement, there was no impermissible double counting). As these cases illustrate, we may infer that two provisions do not serve unique purposes under the Guidelines, and that the Commission did not intend them to be applied cumulatively, only when the provisions are co-extensive or one provision entirely subsumes the other.

This precedent squarely forecloses Smith's claim that the district court engaged in impermissible double counting. Because having "undue influence" on a victim under § 2G1.3(b)(2)(B) may involve acts that do not constitute "force, fraud, or coercion" encompassed in § 2G1.3(a)(1), the two provisions serve unique purposes under the Guidelines and may both be applied to the same conduct. Here, the district court could reasonably determine that Smith "unduly influenced a minor to engage in prohibited sexual conduct," § 2G1.3(b)(2), by preying on M.S.'s vulnerability. Smith took steps aimed at making M.S. dependent on him: knowing she was homeless and lacking family support or financial resources, he invited her to move in with him, gave her a job, and began a sexual relationship with her. These predatory acts compromised the voluntariness of her ability to resist Smith's demands that she work as a prostitute for him. *See United States v. Brooks*, 610 F.3d 1186, 1199 (9th Cir. 2010); *see also* § 2G1.3 cmt. 3(B) ("Undue influence" is defined as activity that "compromise[s] the voluntariness of the minor's behavior"). Yet, these acts do not amount to "force" or

"fraud."[6]  *See* Webster's Third New International Dictionary 887, 904 (2002) (defining "force" as "violence or such threat or display of physical aggression toward a person as reasonably inspires fear of pain, bodily harm, or death," and defining "fraud" as "an instance or an act of trickery or deceit esp[ecially] when involving misrepresentation.").  Nor do such acts amount to "coercion" as defined in § 1591.  *See* 18 U.S.C. § 1591(e)(2) (defining "coercion" to mean "(A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or (C) the abuse or threatened abuse of law or the legal process").

Accordingly, we conclude that the district court did not err in applying a two-point enhancement for "undue influence" under § 2G1.3(b)(2) when calculating Smith's guidelines range.

**B**

We now turn to Smith's claim that the district court erred in imposing an enhancement under § 3B1.1(c).  Under § 3B1.1(c), a two-level upward adjustment is warranted if the defendant is an "organizer, leader, manager, or supervisor in any criminal activity."  The notes to § 3B1.1(c) provide that a defendant must have overseen "one or more other participants" to qualify for the upward adjustment, *see* § 3B1.1 cmt. 2, and define "participant" as "a person who is

---

[6] Because § 1591 does not define "force" and "fraud," we rely on those terms' ordinary dictionary meaning. *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 432 (9th Cir. 2011).

criminally responsible for the commission of the offense, but need not have been convicted." *Id.* Smith argues that imposing this enhancement was improper because there were no participants in the particular criminal activity at issue, sex trafficking of children. According to Smith, M.S. could not be a participant, because his conviction was based on the government's theory that M.S. was the sole victim of the underlying § 1591 offense, and a victim cannot also be a participant. Smith also contends that any participant would have to be a minor, given the nature of the underlying offense.

We have held that "[a] court may impose this [§ 3B1.1(c)] enhancement if there is evidence that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime." *United States v. Whitney*, 673 F.3d 965, 975 (9th Cir. 2012) (internal quotation marks omitted). Any person who knowingly abets the defendant's conduct qualifies as a "participant." *See United States v. Cyphers*, 130 F.3d 1361, 1363 (9th Cir. 1997); *see also United States v. Bisong*, 645 F.3d 384, 397–98 (D.C. Cir. 2011).

There was ample evidence before the district court that Michelle knowingly abetted Smith's § 1591 offense. It is clear that Smith assigned Michelle, his "bottom bitch," to groom M.S. for her prostitution responsibilities, and that Michelle undertook a number of steps in doing so. Under *Cyphers*, it is immaterial that Michelle did not herself commit the same underlying offense as Smith, so long as she was a knowing accessory to his crime. 130 F.3d at 1363–64. Nor was it necessary for the government to prove that Michelle was also coerced by Smith, so long as she "knew and

participated in the [illegal] practices at the direction of the defendant," *id.* at 1363, which was easily established by M.S.'s testimony. Because Michelle knowingly abetted Smith's child sex trafficking offense, she qualified as a "participant" under § 3B1.1, and therefore Smith was "responsible for organizing [Michelle] for the purpose of carrying out" that criminal act. *Whitney*, 673 F.3d at 975. Accordingly, the district court did not err in imposing the two-level adjustment under § 3B1.1(c).[7]

   **AFFIRMED.**

---

[7] We also reject Smith's argument that the district court erred in refusing to hold an evidentiary hearing to resolve Smith's challenges to M.S.'s testimony included in the pre-sentence report. The district court reviewed and acknowledged these factual objections during the sentencing hearing, and clearly rejected them by ruling that M.S.'s testimony was "truthful and honest," thus fulfilling its obligations under Federal Rule of Criminal Procedure 32(i)(3)(B). Likewise, the district court complied with Rule 32(i)(3)(B) by ruling that the challenged statements of one of Smith's prostitutes who spoke at the sentencing hearing but not under oath would have no effect on his sentencing decision.