**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

DEC 2 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-50271 |
| Plaintiff-Appellee, | D.C. No. 3:20-cr-02111-JLS-1 |
| v. | |
| EDWARD DELOACH, AKA Ajamu Ayobamidele Bey, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Submitted November 4, 2024**
Pasadena, California

Before: WARDLAW, HURWITZ, and DESAI, Circuit Judges.

Edward Deloach appeals his conviction and sentence for filing false liens against federal officials in violation of 18 U.S.C. § 1521. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

1.     Deloach first claims that there was insufficient evidence to support his conviction under 18 U.S.C. § 1521 because the IRS Form 56s he conspired to file do not create actual liens.  However, Section 1521 punishes "[w]hoever files, attempts to file, or conspires to file" a false lien against the property of a federal officer.  The government charged and convicted Deloach with conspiracy and attempt to file a false lien.  "Factual impossibility is not a defense to [] inchoate offense[s]" such as conspiracy and attempt. *United States v. Fleming*, 215 F.3d 930, 936 (9th Cir. 2000).  Because Section 1521 "can be violated without completed conduct, the harm the statute protects against arises from the nature of the documents to be filed, not the validity of the documents." *United States v. Neal*, 776 F.3d 645, 653 (9th Cir. 2015).

The government presented ample evidence that Deloach had the specific intent to file a false lien, and that he took substantial steps toward doing so.  The government adduced evidence that Deloach believed an IRS Form 56 could create a false lien, including an email to a co-conspirator stating that "we must complete the LLs" shortly before the IRS Form 56s were submitted, Deloach's statement to a Federal Bureau of Prisons Lieutenant that he was "placing liens on people," and Deloach's testimony that IRS Form 56s were "[f]iduciary liens."  The government also demonstrated that Deloach believed, at the very least, that filing an IRS Form 56 was one step in the process of creating a lien.  The government produced

transcripts of a call between Deloach and a co-conspirator in which they discussed the "administrative process" and "first step[s]" for retaliating against five federal officials, and subsequent calls in which they discussed how the liens would "go[] forward" in January.

2. Reviewing for plain error, we reject Deloach's contentions that the government committed misconduct either during its closing argument or through the introduction of expert testimony that Deloach had misused IRS Form 56s to create false liens. The prosecution does not engage in misconduct when it "ask[s] the jury to draw inferences from the evidence that the prosecutor believes in good faith might be true." *United States v. Reyes*, 660 F.3d 454, 462 (9th Cir. 2011) (internal quotation marks and citation omitted). Contrary to Deloach's contention, the government did not mislead the jury about the nature of IRS Form 56s or conflate them with actual liens. In its opening statement, the government stated that "an IRS Form 56 cannot actually be used to create a lien," but that Deloach thought he was "either [] creating a lien or . . . at least taking a step in the process of doing so." In closing, the prosecutor argued only its theory of the case when it described the IRS Form 56s as Deloach "claim[ing] a debt" and said "[t]hat's, in essence, a lien, or what the defendant hopes was a lien."

Nor did the expert witness testimony mislead the jury about what "qualifies as a lien." The government's expert did not testify about what technically qualifies

as a lien. Instead, the expert generally explained the "paper terrorism" tactic that Moorish-Americans[1] employ and opined that they "oftentimes" "misuse" forms such as an IRS Form 56 that is "basically just a transfer of [fiduciary] responsibility," because they "don't always get it right."

3.    The district court did not err in applying a two-level upward enhancement pursuant to U.S.S.G. § 2A6.1(b)(2) because "the offense involved more than two false liens or encumbrances." Deloach contends that the district court misapplied the adjustment because there were no actual liens filed. But, as noted above, Section 2A6.1(b)(2) does not require that the offense involve *valid* liens.

Reviewing for plain error, we reject Deloach's alternate contention that no single offense of conviction involved more than two liens. Application Note (1) to Section 2A6.1(b)(2) permits the court to "consider conduct that occurred prior to or during the offense" if it is "substantially and directly connected to the offense." *Neal*, 776 F.3d at 660 (quoting U.S.S.G. § 2A6.1 cmt. n.1). Because Deloach prepared and attempted to file five false liens at the same time, the district court did not plainly err in concluding that Deloach's "offense"—placing a false lien on one victim—involved the four false liens placed on the other victims during the offense conduct.

---

[1]    Deloach is an adherent of the Moorish-American movement. Moorish-Americans are commonly known as the "sovereign citizen community" or the "sovereign citizen movement."

22-50271

Applying Section 2A6.1(b)(2) did not result in "impermissible double-counting" simply because the district court also applied U.S.S.G. § 3D1.4. When two different sentencing guidelines "serve unique purposes," both guidelines may be applied to the same conduct without constituting "impermissible double-counting." *United States v. Smith*, 719 F.3d 1120, 1125 (9th Cir. 2013). As we explained in *Neal*, the purpose of Section 3D1.4 is to provide "incremental punishment for a defendant who is convicted of multiple offenses," whereas the purpose of Section 2A6.1(b)(2) is to account for "the additional time and resources required to remove multiple false liens or encumbrances." *Neal*, 776 F.3d at 661 (internal quotation marks and citations omitted).

4.    Finally, the district court did not abuse its discretion by applying the two-level obstruction of justice enhancement under U.S.S.G. § 3C1.1 for the threat Deloach made to L.B., the district judge presiding over his drug case.[2] *See United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc) ("[A]s a general rule, a district court's application of the Sentencing Guidelines to the facts of a given case should be reviewed for abuse of discretion."). Deloach argues that the district

---

[2]    The district court also applied the obstruction of justice enhancement for perjury under Section 3C1.1. Because we hold that Section 3C1.1 applies for Deloach's threat to L.B., we need not reach the district court's alternative basis for applying this enhancement.

court erred in applying the enhancement because L.B. did not perceive his statement[3] as a threat or he "would have taken action." But the application of Section 3C1.1 here is not controlled by whether L.B. felt threatened. Rather, Section 3C1.1 applies because Deloach's statements "can be *reasonably construed* as a threat" or, at a minimum, an attempt to threaten or intimidate L.B. *See United States v. Perez*, 962 F.3d 420, 451 (9th Cir. 2020) (emphasis added); *United States v. Phillips*, 367 F.3d 846, 859 (9th Cir. 2004).

**AFFIRMED.**

---

[3] At a February 18, 2020, hearing, Deloach told L.B. that "you will be guilty for treason" and "you and your entire household will be removed from this land."